No. 32,779

Jonas Nickell and Carrie Nickell, Husband and Wife, *Appellants,* v. E. Reser, N. E. Reser, Burton Harvey, The Hesston State Bank, William Messner, F. H. Hollow and C. I. Ross, *Appellees.*

(57 P. 2d 101)

Opinion filed May 9, 1936.

B. H. Turner, J. Sidney Nye, Ezra Branine, Alden E. Branine, and Fred Ice, all of Newton, for the appellants.

Clarence R. Sowers, of Wichita, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: Plaintiffs brought this action to set aside an oil royalty deed of conveyance executed by them on the ground it had been wrongfully delivered by an escrow holder, and in the alternative for damages for the value of the conveyance at the time of the wrongful delivery. Among the defenses was that of ratification of the delivery. The original grantees in the conveyance, the escrow holder, and the record owners, through mesne conveyance of the interest conveyed by the oil royalty deed, were made parties defendant. The trial court found the present record owners to be innocent purchasers for value, for which reason the deed could not be set aside; and this ruling is not attacked on this appeal. (But see, on this point, 21 C. J. 885, 886; 10 R. C. L. 636-638.) The court further found generally all controverted issues in favor of the plaintiffs; that the deed had been wrongfully delivered; that it was of the reasonable value of $2,500 at the time it was delivered, and that plaintiffs would be entitled to recover that sum, less $1,000 paid, from the original grantees and the escrow holder were it not for ratification; but further found the wrongful delivery of the deed had been ratified, and based its decision on the opinion of this court in *Christy v. Central State Bank*, 118 Kan. 213, 234 Pac. 984, and rendered judgment for defendants. Plaintiffs have appealed, and contend, *first*, the court was not justified in holding they had ratified the wrongful delivery of the deed; and, *second*, the property conveyed by the deed was a part of their homestead; that there was no evidence the wife did anything to ratify the wrongful delivery, hence there was not the joint consent of husband and wife necessary to make a valid delivery or ratification thereof.

A brief statement of the principal facts disclosed by the record is as follows: The plaintiffs, Jonas Nickell and Carrie Nickell, husband and wife, owned a farm of 240 acres in Harvey county, which they occupied as their home. They had executed an oil lease on the property to the Gypsy Oil Company and were anxious to have drilling done thereon. The Gypsy Oil Company had not drilled, but in lieu thereof was paying the rental as the lease provided. In April, 1934, the defendants, E. Reser and N. E. Reser, went to plaintiffs' home and said they and others, who were not named, had an oil lease

on adjoining land, the Summerfield place, and planned to drill on it right away. They wanted to buy an oil royalty interest in plaintiffs' land. As a result of their talk plaintiffs agreed to sell an oil royalty interest in 100 royalty acres of their land for $1,000 if the conveyance for it was so worded that it would not interefere with their getting the rentals from the Gypsy Oil Company, and upon condition that the Resers and their associates within ninety days should begin the drilling of an oil well on the land leased by them adjoining that of plaintiffs and within a standard offset of 330 feet of the line of plaintiffs' property, the oil royalty deed to be placed in the Hesston State Bank in escrow, to be delivered only if the well was started, as agreed upon, within ninety days, and upon the payment of $1,000. The reason the plaintiffs wanted the well located at a standard offset from their property line was, if it produced oil the Gypsy Oil Company would have to drill on plaintiffs' land. The Resers later brought the instruments, presumed to incorporate their agreement, to plaintiffs' farm. With them was Mr. Ruth, assistant cashier of the Hesston State Bank, to act as notary. The oil royalty deed had been drawn as they had agreed, except plaintiffs contend it contained a clause not read to them or called to their attention, by which the grantees would get a part of the rental paid by the Gypsy Oil Company on the lease. They executed the deed. An escrow agreement had been prepared which contained the provisions the parties had agreed upon, except the one requiring the Resers and their associates to locate the well within 330 feet of plaintiffs' property line. Plaintiffs called attention to that. The Resers said there would be no trouble about that; Mr. Ruth, of the bank where the instruments would be left in escrow, would be a witness if any question came up, but they had no intention of locating it anywhere else anyway; so that instrument was signed. This was April 27, 1934. Nickell wanted copies of the instruments; Reser promised to furnish copies. The instruments were placed in the Hesston State Bank in escrow. The escrow was handled at the bank by Messner, cashier, and Ruth, assistant cashier. In June, 1934, the Resers and their associates started a well on the property adjoining plaintiffs' land, but instead of locating it a standard offset, 330 feet, from the line of plaintiffs' property, they located it about 80 rods away. Within a day or two Jonas Nickell learned of this, went to the Hesston State Bank and talked with Messner, told him the agreement was not being complied with and in what respect, and wanted to take the

deed. Messner refused to let him have it; said, "They [the papers] will stay right here in the bank." A few days later, June 26, 1934, Nickell went to the bank again. Messner, Ruth, both of the Resers, and Frank Hollow, who appeared to be interested with them in some way, were there. Nickell demanded his papers, and told Reser: "You know you promised us a standard offset, and you haven't done it." He appealed to Ruth and asked if that wasn't right. Ruth said: "Yes, they agreed and promised you folks a standard offset, and you also commanded that it should be written down in black and white." Reser spoke up and said: "Never mind, you will get your offset," and Hollow said: "Don't worry, Mr. Nickell, you will get plenty yet. I just wish I had your lease. I would give you $10,000 for your lease." Of course this was a safe statement to make, since plaintiffs' land was already leased. Nickell was not satisfied and still demanded the papers. The bank refused to give them to him. Later E. Reser went to plaintiffs' home  Nickell told him he had not come up to his agreement. "You know you promised us a standard offset." Reser replied: "Well, we really had intended to give you a standard offset at this corner of Summerfield's, but the Gypsy Oil Company wouldn't come and help us," and they found another oil company that would help, "and that is why they put the well over there."

On June 27, 1934, the Resers paid $1,000 to the escrow holder and the oil royalty deed was given to them. At that time it was reasonably worth $2,500. They recorded it, immediately conveyed to other parties, who filed their deeds on June 27, 1934. It was these last grantees the court found to be innocent purchasers for value. When the $1,000 was paid to the escrow holder, the Hesston State Bank, it opened an account on its books in the name of Jonas Nickell, and deposited this sum to his credit in the account and mailed him a deposit slip therefor. The bank had no authority from Jonas Nickell, or anyone else, to do this; he had not transacted his banking business there, and had no account there until the bank officials took it upon themselves to make one for him.

On receiving the certificate of deposit Nickell did not know what to do. He went to his attorney, Mr. Nye, at Newton, and told his story. Naturally Nye outlined an action to set aside the oil royalty deed, and in the alternative for damages. This required a tender of the $1,000 paid by Resers to the escrow holder, then to the credit of Nickell at the Hesston State Bank. Nickell said he "didn't trust

that bank." In view of what the officers had done he did not know what they would do in the future. Nye advised that he get that credit in his own bank, so when they made the tender, if it were accepted, he would be confident of having the money to pay into court. Nickell went to the bank at Mound Ridge, where he transacted his banking business, and drew a sight draft for $1,000 on the Hesston State Bank. This was handled through ordinary banking methods, which took several days, with the result that the $1,000, which wrongfully had been placed to his credit at the Hesston State Bank, was to his credit in his regular account in the Mound Ridge Bank. His attorney then prepared the necessary papers and filed this action July 9, 1934, asking to set aside this deed, tendering the $1,000 back, and in the alternative for damages.

Turning now to the legal questions argued. The trial court held the drawing of the draft on the escrow bank by Nickell, transferring the funds to his own bank, with full knowledge the conditions of the escrow agreement had not been complied with, and after consultation with his attorney, constituted ratification of the wrongful delivery "under the authority of" the Christy case, *supra*. Appellants contend the Christy case is not controlling here because of the difference in facts. We agree with this view. The Christy case was applied to a case of principal and agent; here there is a third party, the escrow holder. While the escrow holder has been spoken of as the agent of both parties (*Davis v. Clark*, 58 Kan. 100, 48 Pac. 563), yet that can be true in a limited sense only, as the decision in that case demonstrates, and is more fully treated in *Smith v. Griffith*, 105 Kan. 357, 184 Pac. 725, a case more like the one before us than the Christy case. Indeed, it is the general rule the deposit of instruments in escrow cannot be made with one who is the agent of either of the parties to the instrument (21 C. J. 873 *et seq.;* 10 R. C. L. 629, 632), for if the depositary is the agent of the grantor the instrument is retained by him; if the agent of the grantee, there is a delivery of the instrument. To the extent the term agent is applicable it is a limited agency, with duties and powers limited to the terms of the escrow agreement. He is sometimes spoken of as the trustee of an express trust. (10 R. C. L. 633.) Certainly, to call him the agent of the parties leads to confusion. It is as well to treat him as just what he is, a third party to whom the principal parties to the contract have entrusted certain authority by the escrow agreement. He must look to that for his powers and duties.

The escrow agreement may be in writing or in parol, or part of it in writing and part in parol. (10 R. C. L. 624.) It is essential, of course, that he know the terms of the escrow agreement in order to understand his duties. But when he knows those he acts by virtue of his own powers and authority and not as the agent of anybody. There is no controversy about any of these matters in this case; they are mentioned here to distinguish this case from the Christy case.

Do the facts here justify a holding that plaintiffs' ratified the wrongful delivery of the deed? This is a question of fact. (10 R. C. L. 644.) The court found generally all the facts for plaintiffs and appears to have rested its conclusion on the Christy case, as a matter of law. As we have seen, that result is not justified. Perhaps this is too strict an interpretation of the court's conclusion. If so, then we should look to the facts to see if they justify a finding of ratification irrespective of the Christy case. Generally speaking, one may ratify, as having been done, what he could have agreed to do in the first instance. Here the oil royalty deed conveyed a part of plaintiffs' homestead. Nickell could not make that conveyance alone; Mrs. Nickell did nothing which the court found to constitute a ratification of the concededly wrongful delivery of this deed. Appellants contend, since Mr. Nickell alone could not have made this conveyance in the first instance, he alone could not ratify the wrongful delivery. While this point has merit we shall not analyze it carefully nor predicate our decision upon it.

Even though the Christy case does not apply here, it is well settled that the grantor of a deed placed in escrow may ratify its wrongful delivery by the escrow holder. (10 R. C. L. 638; 21 C. J. 887.) We shall not attempt to analyze the numerous cases cited in the footnotes, nor those cited in Words and Phrases, under Ratification. Through these runs the rule, rather definitely established, that the grantor of an instrument which he and the grantee have placed in escrow to be delivered only on specified conditions, but which the escrow holder has delivered without all the conditions having been complied with, may ratify such wrongful delivery. Whether he has done so or not depends upon the facts shown by the evidence. The ratification is in a sense the making of a new and different contract than that made at the time the instrument was placed in escrow. Such ratification may be shown by any acts or conduct, from which it necessarily follows that he intended to make such a new contract

by letting the instrument stand as though it had been rightly delivered. In determining whether there has been ratification the court will look through the form of what was done to the facts indicating purpose. Here there is no question about the purpose of transferring this sum from one bank to the other. Plaintiff was advised to do so by an experienced attorney; he did not trust the Hesston bank; if he made a tender back of this fund he wanted to have it in a place where he could be sure his tender could be made good. That was his purpose in doing it, and the purpose his attorney had in having him do it. Hence, if we look through the form of what was done to the facts, and their purpose, it is clear he never ratified the wrongful delivery. He did all those things and brought his action promptly, the 12th day after the wrongful delivery. Defendants were not hurt in any way; their position had not been changed to their disadvantage. The only thing done by any of them after June 27, and before this action was filed, was that the bank, which had taken the $1,000 paid to it and sent a credit slip for it, had sent the amount to plaintiff, as it should have done in the first place. Had that been done and this action brought as it was there would not have been even the appearance of ratification.

Appellees make light of Nickell's testimony that he "didn't trust" the Hesston bank, but he was justified in entertaining that view in the light of what had taken place.

In this court the findings of the trial court that the oil royalty deed was wrongfully delivered for $1,000, that it was of the value of $2,500, that the money received by the Hesston bank was wrongfully handled by it, as a result of which plaintiffs have been damaged in the sum of $1,500, are unchallenged; there is no cross-appeal. Appellees' sole contention is that plaintiffs cannot recover because Nickell did not trust the Hesston bank, and on the advice of his attorney preparing to bring this action he transferred the deposit wrongfully made in the Hesston bank to his own bank at Mound Ridge so he could be confident of having the fund available for his tender. This is an equitable action. To approve appellees' contention would be inequitable under the facts of this case.

The result is, the judgment of the court below must be reversed with directions to enter judgment for plaintiffs for $1,500, with interest since June 27, 1934. It is so ordered.