584 So.2d 1051 (1991)
SMP, LTD., a Florida Limited Partnership, Appellant,
v.
SYPRETT, MESHAD, RESNICK & LIEB, P.A., Appellee.
No. 90-01685.
District Court of Appeal of Florida, Second District.
July 26, 1991.
Rehearing Denied September 10, 1991.
*1052 David S. Maglich of Fergeson, Skipper, Shaw, Keyser, Baron & Tirabassi, P.A., Sarasota, for appellant.
Charles J. Cheves of Cheves, Rapkin & DeCiantis, P.A., Venice and W. Richard Thoreen, Sarasota, for appellee.
ALTENBERND, Judge.
SMP, Ltd., appeals a final judgment of interpleader. It brings this appeal to challenge an earlier, nonfinal order which granted a summary judgment on SMP's counterclaim against Syprett, Meshad, Resnick & Lieb, P.A. (the law firm), as the escrow agent holding certain securities involved in a business transaction. The summary judgment was granted on the pleadings and the factual admissions within the pleadings, rather than on affidavits, depositions or other discovery. Thus, the judgment effectively dismissed the counterclaim as a matter of law for failure to state a cause of action.
SMP's counterclaim alleges both a breach of the escrow contract and a breach of the escrow agent's common law duties because the law firm allegedly failed to obey or to respond to SMP's instructions to sell the securities. We affirm the dismissal of the count for breach of the escrow contract because the law firm had no contractual duty under that written agreement to sell the securities. We reverse the dismissal of the second count because, in light of the brevity of the escrow contract, the law firm had a common law duty under either the law of agency or the law of trust to respond in some reasonable and timely fashion to SMP's instructions to sell the securities. The specifics of this duty and a decision concerning its possible breach could not be resolved in favor of the law firm on the pleadings.
SMP owns a shopping center in Sarasota, Florida. In September 1986, it leased a portion of that center to Sarasota Entertainment Corporation. Under the lease agreement, SMP and Sarasota Entertainment contemplated substantial leasehold improvements. Sarasota Entertainment agreed to pay one-half of the cost of these improvements. Each of its progress payments was due ten days after the contractor submitted an appropriate request for a construction draw. In order to secure its obligation for these payments, Sarasota Entertainment agreed to place certain securities in escrow.
The law firm represented Sarasota Entertainment in the negotiations for the security agreement. In addition to this function, the law firm agreed to serve as escrow agent for the securities. Under the security agreement prepared by the law firm, SMP, as "Assignee," received the "unconditional right to sell the necessary number of shares of stock assigned hereby to generate funds sufficient to cover [Sarasota Entertainment's] obligation to fund reimbursement under said lease." In its entirety, the escrow clause in this agreement states:

Escrow Agent. This Security Agreement shall be perfected by the delivery to Assignee of the described stock certificates, whereupon Assignee shall deliver same to the law firm of Syprett, Meshad, *1053 Resnick & Lieb, P.A., 1900 Ringling Boulevard, Sarasota, Florida 33577 (Escrow Agent) to be held on behalf of the parties pursuant to the terms of this Agreement.
The securities were delivered to the law firm.
Sarasota Entertainment failed to pay its share of two draws which were submitted in July 1987. As a result, SMP's project manager sent a letter to the law firm on August 26, 1987, which states:
As Escrow Agent for Sarasota Entertainment Corp. I hereby direct you to sell the required number of stocks to satisfy Sarasota Entertainment's portions of the Draws as required in the attached letter.
The law firm apparently did not believe it had the authority to sell the stock pursuant to the terms of the agreement. Rather than inform SMP of its opinion, the law firm allegedly did not respond in any fashion to this letter until it filed this interpleader action on November 4, 1987. The complaint in interpleader alleges that a dispute had arisen between SMP and Sarasota Entertainment concerning the proper disposition of the securities and that the law firm, as a mere stakeholder, desired to interplead the securities.
SMP filed a counterclaim in response to the complaint of interpleader. The counterclaim alleges that the law firm did not sell the securities as instructed by SMP in August, and that the securities had become "virtually worthless" by November.[1] In the first count of the two-count counter-claim, SMP alleges that the law firm had a contractual duty under the escrow agreement to sell the stock in August pursuant to SMP's instructions. In the second count, SMP broadly alleges that the law firm had a common law duty to preserve the value of the stock by filing a timely interpleader or by taking other action. The trial court's final judgment permitted the interpleader and dismissed the counterclaim with prejudice. SMP does not challenge the order authorizing interpleader, but appeals the summary judgment concerning its counterclaim.
The dispositive issue in this case is whether the escrow agent had a duty to disclose, in a timely fashion, that it would not honor a party's instruction to sell the securities because it did not interpret the agreement to give it the authority to sell the securities. At least in August 1987, this escrow agent may have believed such information would be harmful to the interests of the other party, Sarasota Entertainment. In light of the brevity of the escrow agreement, we hold that such a duty could exist under the allegations in this complaint. Whether that duty was breached and, if so, whether any damage was caused thereby are issues that have not yet been resolved in this case.

I. THE SOURCES OF AN ESCROW AGENT'S DUTIES
The law of escrow does not fall neatly within the established rules of either contract, agency, or trust.[2] The law of escrow is complicated primarily by the fact that the escrow agent or depositary provides a service to at least two parties with potential or actual adverse interests. The law has struggled to place a reasonable and predictable duty upon the third party who elects to perform this difficult task with its inherent potential for conflict.
In early cases, Florida emphasized the role of the escrow agent as trustee. For example, in Ullendorff v. Graham, 80 Fla. 845, 87 So. 50 (1920), the court reasoned that the escrow holder in that case "was, in effect, a trustee of both parties, charged with the performance of an express trust governed by the escrow agreement, which *1054 agreement was not required to be in writing; there being a deposit of the escrow paper." Ullendorff, 80 Fla. at 851, 87 So. at 52. See also Tomasello v. Murphy, 100 Fla. 132, 129 So. 328 (1930). "This court has repeatedly held that an escrow holder is a trustee." Dodson v. National Title Ins. Co., 159 Fla. 371, 31 So.2d 402, 404 (1947). See generally Restatement (Second) of Trusts § 32, comment d (1959); Nash v. Normandy State Bank, 201 S.W.2d 299 (Mo. 1947).
Certainly, it is logical to think of the property in escrow, i.e., the stock certificates, as the res of a trust. As a trustee of that property, the escrow agent or depositary should have a fiduciary duty to protect and preserve the res under the terms of the trust. It is unrealistic, however, to expect the escrow agent to have the same fiduciary duties to adversarial parties as a trustee might have to two beneficiaries with compatible interests. Placing extensive fiduciary duties upon the escrow holder would simply increase the likelihood that the escrow holder would be unable to take action due to conflict. The written escrow agreement in this case does not expressly create such broad fiduciary duties, and we can perceive no reason to imply any extensive fiduciary duties in the context of an escrow beyond the duty to protect the res.
Florida has also recognized that the escrow holder is, in a broad sense, an agent. "It has been held that the duty of an escrow holder is determined by the application of the principles of agency, whether the escrow holder is considered the holder with duties to both parties or the agent for the depositor alone, and the holder has a fiduciary responsibility and is required to exercise reasonable skill and ordinary diligence." Biadi v. Lawyers Title Ins. Corp., 374 So.2d 30, 34 (Fla. 3d DCA 1979). See also 28 Am.Jur.2d Escrow § 11 (1966).
In light of the conflict between the parties who create an escrow, this court has previously emphasized that the language of the escrow agreement is the "primary consideration" in determining the nature and extent of the agency. Cradock v. Cooper, 123 So.2d 256 (Fla. 2d DCA 1960). Other courts have also emphasized that the escrow agent is a special or limited agent with duties primarily established by the escrow agreement. Locks v. North Towne Nat'l Bank, 115 Ill. App.3d 729, 71 Ill.Dec. 531, 451 N.E.2d 19 (App.Ct. 1983); Berry v. McLeod, 124 Ariz. 346, 604 P.2d 610 (1979); Blackburn v. McCoy, 1 Cal. App.2d 648, 37 P.2d 153 (Dist.Ct.App. 1934); Kreuer v. Union Nat'l Bank, 276 Pa. 201, 119 A. 921 (1923). In Nickell v. Reser, 143 Kan. 831, 57 P.2d 101 (1936), the court stated:
Certainly, to call him the agent of the parties leads to confusion. It is as well to treat him as just what he is, a third party to whom the principal parties to the contract have intrusted certain authority by the escrow agreement. He must look to that for his powers and duties.
Nickell, 143 Kan. at 835, 57 P.2d at 103. Although this opinion establishes a duty outside the express written language of the escrow agreement, we emphasize that the additional duty which this opinion describes is derived from the agreement and the escrow agent's need to respond in light of its brevity. We are not recognizing any common law duty of reasonable skill and ordinary diligence that might exist without reference to the escrow agreement.
Typically, an agent has a duty to disclose to a principal all material facts relevant to the agency. Sudberry v. Lowke, 403 So.2d 1117 (Fla. 5th DCA 1981). This case demonstrates that an escrow holder frequently cannot perform this task for one party to the escrow without potentially harming the interests of the other party. In other states, the law has not placed a duty on the escrow agent to disclose material facts unless the duty is stated in the agreement or unless the circumstances involve known fraud. Maganas v. Northroup, 135 Ariz. 573, 663 P.2d 565 (1983); Berry; Bardach v. Chain Bakers, Inc., 265 A.D. 24, 37 N.Y.S.2d 584 (App.Div. 1942). We do not perceive this opinion as requiring a more extensive disclosure of material facts.
Finally, we note that the escrow holder in this case is a law firm. The fact that the law firm represented Sarasota Entertainment, *1055 at least when the escrow was created, is a complicating factor for this analysis. At one time, the prevailing and unqualified rule prevented the deposit of the escrowed instrument with one who was the agent of either of the parties to the instrument. 28 Am.Jur.2d Escrow § 13 (1966). Florida, however, now allows an attorney to act as the escrow agent, "so long as his duties do not involve a conflict of interest with, or a violation of, duty to his client as principal, and so long as the condition of the escrow is not made dependent upon the client's volition." Cradock, 123 So.2d at 257. Although this case may demonstrate many practical reasons for an attorney to avoid serving as an escrow holder for a transaction involving a client, the fact that the escrow holder is a law firm should not increase or diminish its duties to the parties as depositary. See generally Progressive Iron Works Realty Corp. v. Eastern Milling Co., 155 Me. 16, 150 A.2d 760 (1959).

II. NO DUTY UNDER THE WRITTEN ESCROW AGREEMENT
We agree with the trial court that the first count of the counterclaim, alleging a contractual duty to sell the securities, was properly dismissed. The written escrow agreement contains no provision expressly requiring or clearly authorizing the law firm to sell the securities. Its job was to hold the stock on behalf of both parties "pursuant to the terms of this Agreement." It was not empowered to sell the securities upon the instructions of one of the two parties to the escrow. If the security agreement empowers anyone to sell the securities, that power is given to SMP rather than to the law firm. Under neither a trust theory nor an agency theory is it appropriate for us to create any implied contract in this case requiring the law firm to sell the securities at the instruction of one party. Thus, we affirm the dismissal of this count.

III. A DUTY TO DISCLOSE THE ESCROW AGENT'S REFUSAL TO ACT
Although the allegations of the second count are somewhat vague, they are adequate to allege a viable cause of action. Even if the law firm was not required to sell the securities upon SMP's instructions, we hold that it was required to take some reasonable action to inform the parties to the escrow agreement of its refusal to follow instructions which one of the parties had reasonably given under the terms of the escrow agreement. The law firm could not simply choose to take no action between August and November.
If the escrow agreement in this case had contained more precise duties and instructions, it would be arguable that the escrow holder could have relied upon that language to inform SMP of the escrow holder's true authority. In this case, however, the agreement is abbreviated and does not describe any sales procedure. It is clear from SMP's allegations that it intends to prove that it reasonably believed that the law firm had the authority to sell the securities, that it relied upon the law firm to do so in late August or early September, and that it would have sold the securities itself had it been informed that the law firm would not perform this function.
In light of the nature of escrow, we are not inclined to substantially expand the escrow holder's duties beyond those expressly stated in the agreement. Nevertheless, it seems appropriate to require the escrow holder to respond to the parties' instructions when the agreement does not fully delineate the escrow holders' duties.
Affirmed in part, reversed in part, and remanded.
SCHOONOVER, C.J., and SCHEB, J., concur.
NOTES
[1] We note that the stock market took an inordinate downturn in October 1987, shortly before this interpleader was filed.
[2] The court in Squire v. Branciforti, 131 Ohio St. 344, 2 N.E.2d 878 (1936), observed:

An escrow fills a definite niche in the body of the law. It has a distinct legal character.
... .
The law is not in complete harmony as to whether the depositary is an agent or trustee. We are inclined to the belief that he is both. Agent in so far as specific personal duties are to be performed, and trustee in so far as the funds placed in his hands are concerned.
Squire, 131 Ohio St. at 354, 2 N.E.2d at 882.