In re Thomas H. DAMERON, et al., Debtors.

OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, et al., Plaintiffs,

v.

Robert O. TYLER, Trustee, et al., Defendants.

Bankruptcy No. 96–10873–T.
Adv. No. 96–1083.

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Feb. 6, 1997.

Brian F. Kenney, Miles & Stockbridge, McLean, Virginia.

Robert O. Tyler, Trustee, Tyler, Bartl, Burke & Albert, Alexandria, Virginia.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This adversary proceeding raises the issue of whether the creditor plaintiffs' construc-

tive trust claims may be allowed in these consolidated bankruptcy cases against the funds in a bank account of the debtors. The facts are undisputed, and the issue comes before the court for decision on the parties' cross-motions for summary judgment.

For the reasons stated in this memorandum opinion, the court will grant the plaintiffs' motion for summary judgment and will deny the Trustee's motion for summary judgment.

### Findings of Fact

The chapter 11 bankruptcy cases of Thomas H. Dameron and Mid–Atlantic Title and Escrow, Inc., were commenced by involuntary petitions filed on February 23, 1996. The unopposed orders for relief were entered on March 26, 1996. Dameron's bankruptcy case has now been consolidated with that of Mid–Atlantic and other closely held corporations of Dameron.

The debtor Dameron, formerly a Virginia lawyer, operated and controlled the business activities of Mid–Atlantic for the purpose of conducting real estate settlements and writing title insurance policies. Mid–Atlantic maintained an account in Burke & Herbert Bank & Trust Company for its use in conducting settlements (the B & H account). This account was not a fiduciary account as such, and Mid–Atlantic co-mingled in the account its own funds and those received from mortgage lenders for loan settlements.

In January 1996, mortgage lenders had advanced settlement funds (loan proceeds) to Mid–Atlantic which were deposited in escrow to its B & H account for loan settlements. Mid–Atlantic acted as settlement agent for the lenders. From January 19, 1996, to January 31, 1996, settlement activities took place and transactions were recorded in Mid–Atlantic's B & H account as follows:

1. On or about January 19, 1996, Mid–Atlantic conducted the "Browning Settlement" and accepted a check in the amount of $71,475.40 from Shelter Mortgage Corporation. In doing so, Mid–Atlantic agreed with Shelter to hold these funds in escrow until it had complied with Shelter's closing instructions, at which time it would

be authorized to disburse the funds to the appropriate parties.

2. On or about January 23, 1996, Mid–Atlantic conducted the "Hedayaty Settlement."

3. On or about January 23, 1996, Mid–Atlantic conducted the "Ruffin Settlement."

4. On January 24, 1996, Mid–Atlantic's B & H account held a positive balance of $7,846.60.

5. On or about January 25, 1996, Mid–Atlantic conducted the "Abercrombe Settlement."

6. On January 25, 1996, Mid–Atlantic deposited Shelter's check of $71,475.40 into its B & H account.

7. On January 25, 1996, miscellaneous activities in Mid–Atlantic's B & H account resulted in a net reduction of $456.52. On that day the account closed with a positive balance of $78,865.48, with $71,475.40 of that total held in escrow for Shelter.

8. On January 26, 1996, Mid–Atlantic's account was subjected to a "Not Sufficient Funds" reversal in the amount of $112,-316.35 for a check paid on January 25, 1996. This resulted in no net loss or gain to the account.

9. On January 26, 1996, Mid–Atlantic's account was subjected to a "Not Sufficient Funds" reversal in the amount of $189,-439.71 for a check paid on January 26, 1996. This resulted in no net loss or gain to the account.

10. On January 26, 1996, miscellaneous activities in Mid–Atlantic's B & H account resulted in a net reduction of $192.00. On that day the account closed with a positive balance of $78,673.48, with $71,474.40 of that total held in escrow.

11. On January 29, 1996, Burke & Herbert (on behalf of Mid–Atlantic) accepted a wire transfer of $41,619.20 from Mortgage Access Corporation in connection with the "Hedayaty Settlement." In authorizing Burke & Herbert to credit the funds to its account, Mid–Atlantic agreed with the lender to hold these funds in escrow until it had complied with the lender's closing instructions, at which time it would be

authorized to disburse the funds to the appropriate parties.

12. On January 29, 1996, Burke & Herbert (on behalf of Mid–Atlantic) accepted a wire transfer of $180,749.82 from Chemical Residential Mortgage Corporation in connection with the "Ruffin Settlement." In authorizing Burke & Herbert to credit the funds to its account, Mid–Atlantic agreed with the lender to hold these funds in escrow until it had complied with the lender's closing instructions, at which time it would be authorized to disburse the funds to the appropriate parties.

13. On January 29, 1996, miscellaneous activities in Mid–Atlantic's B & H account resulted in a net reduction of $12,511.13. On that day the account closed with a positive balance of $288,531.37; the sum of $293,844.42 received from the lenders should have been held in escrow at that time.

14. On January 31, 1996, Burke & Herbert (on behalf of Mid–Atlantic) accepted a wire transfer of $164,807.10 from Chemical in connection with the "Abercrombe Settlement." In authorizing Burke & Herbert to credit the funds to its account, Mid–Atlantic agreed with the lender to hold these funds in escrow until it had complied with the lender's closing instructions, at which time it would be authorized to disburse the funds to the appropriate parties.

By January 31, 1996, although Mid–Atlantic had conducted the four settlements referred to above, it had failed to fully comply with the lenders' closing instructions. Instead of completing the settlements and disbursing the funds as required by the lenders' closing instructions, Mid–Atlantic retained the escrowed loan proceeds in its B & H account. On January 31, 1996, Mid–Atlantic's B & H account had a positive balance of $453,338.47, all of which funds represented the loan proceeds delivered to Mid–Atlantic in escrow by the four lenders. The sum of $458,651.52 received from the lenders should have been held in escrow at that time. Mid–

Atlantic's retention of these funds was a misappropriation of the escrowed funds by Dameron and Mid–Atlantic.

At about the same time as the above transactions were taking place, the Virginia State Bar learned that Dameron had been engaged in misappropriating funds provided by mortgage lenders for real estate settlements. The bar brought suit against Dameron in the Circuit Court of the City of Alexandria, Virginia, which appointed a receiver for Dameron and restrained assets of Dameron and his corporations. As part of this restraint, on January 31, 1996, the circuit court ordered the freezing of Mid–Atlantic's B & H account, which, as stated above, held a balance of $453,338.47.[1]

On February 23, 1996, the lenders whose funds were held in the B & H account on January 31, 1996, filed the involuntary bankruptcy petitions against Dameron and Mid–Atlantic. Plaintiffs Chemical and Old Republic National Title Insurance Company[2] then brought this adversary proceeding to enforce their rights as alleged beneficial owners of the funds held by Burke & Herbert in Mid–Atlantic's account.

### Discussion and Conclusions of Law

The debtor Dameron, through his control of Mid–Atlantic Title and Escrow, Inc., misappropriated mortgage loan funds advanced by three lenders, whose rights through subrogation, are now held by the two plaintiffs in this adversary proceeding. Dameron did this by failing to disburse the funds pursuant to the lenders' closing instructions following settlement of mortgage loan refinancings. These funds had been entrusted to Mid–Atlantic (and Dameron) as settlement agent to hold in escrow pending the settlements.

The sum of $453,338.47, directly traceable from the lenders' funds, was held in Mid–Atlantic's bank account when it was frozen by order of the state court and when the bankruptcy petitions were filed against Dam-

---

1. As a result of Dameron's activities, he has been disbarred and has pled guilty to criminal charges.

2. Old Republic National Title Insurance Company, pursuant to its subrogation rights, has been substituted as a plaintiff for both Shelter and Mortgage Access.

This is page 5 of 11.

eron and Mid–Atlantic.[3] Chemical and Old Republic's "Complaint to Impose Constructive Trust" asserts that the trustee in bankruptcy for Dameron and Mid–Atlantic has only bare legal title to the funds in Mid–Atlantic's Burke & Herbert account and no beneficial interest.

Chemical and Old Republic contend that a constructive trust furnishes them with equitable title to the funds and precludes Dameron's or Mid–Atlantic's bankruptcy trustee from asserting more than a bare legal interest. They conclude therefore that Bankruptcy Code § 541(d) excludes the funds from the reach of the bankruptcy estate.[4] As the United States Supreme Court noted in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983), "Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition." The trustee counters that the plaintiffs cannot prevail because a constructive trust provides only an equitable remedy and does not give plaintiffs an equitable property interest as contemplated by § 541(d).

## CONSTRUCTIVE TRUST CLAIMS IN BANKRUPTCY

Many courts, including the Fourth Circuit and this court, have recognized constructive trusts as property claims in bankruptcy. *See City Nat'l Bank of Miami v. General Coffee Corp. (In re General Coffee Corp.)*, 828 F.2d 699 (11th Cir.1987), *cert. denied* 485 U.S. 1007, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988); *Mid–Atlantic Supply, Inc. of Va. v. Three Rivers Aluminum Co. (In re Mid–Atlantic Supply Co.)*, 790 F.2d 1121 (4th Cir.1986); *Citizens Fed. Bank v. Cardian Mortgage Corp. (In re Cardian Mortgage Corp.)*, 122 B.R. 255 (Bankr.E.D.Va.1990) (holding that, under Virginia law, an erroneous credit to the debtor's bank account warranted the imposition of a constructive trust in favor of the

bank which was entitled to the credit); 5 *Collier On Bankruptcy* ¶ 541.11 (Lawrence P. King et al. eds., 15th ed. rev. 1996); Emily L. Sherwin, *Constructive Trusts In Bankruptcy*, 1989 Ill.L.Rev. 297, 313–14 n. 74 (1989).

However, the viability of constructive trusts as claims in bankruptcy has recently come under attack both in case law and in legal journals. *See XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443 (6th Cir.1994); *Cooper v. First Citizens Bank (In re Jones)*, 186 B.R. 71, 78 (Bankr. W.D.Ky.1995); *Berger, Shapiro & Davis, P.A. v. Haeling (In re Foos)*, 183 B.R. 149, 154 (Bankr.N.D.Ill.1995); *Monfort, Inc. v. Kunkel (In re Morken)*, 182 B.R. 1007, 1022–23 (Bankr.D.Minn.1995); Sherwin, *supra*, at 301; Carlos J. Cuevas, *Bankruptcy Code Section 544(d) and Constructive Trusts*, 21 Seton Hall L.Rev. 678, 687 (1991).

The principal rationale for the recent holdings denying constructive trust claims is the view that a constructive trust does not arise until it is determined to exist by a court in a judicial proceeding; if the trust has not been judicially determined prepetition these cases hold that the assertion of a trust is merely another unsecured claim against the bankruptcy estate. This view of a constructive trust has appeal in bankruptcy since the Bankruptcy Code provides an equitable setting which preserves the assets of a debtor for all creditors. These cases hold that it is not appropriate to allow one creditor to assert the equitable principle of constructive trust to gain an advantage over other creditors.

Thus, in *Omegas* the Sixth Circuit found opinions which recognize a creditor's constructive trust in bankruptcy to be flawed because "a constructive trust is not really a trust. A constructive trust is a legal fiction, a common-law remedy in equity that may

**3.** The trustee maintains that the plaintiffs cannot trace the funds sufficiently to enforce a constructive trust under Virginia law. The court's tracing analysis is set out in Part V of this opinion.

**4.** 11 U.S.C. § 541(d) provides: "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold

by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

only exist by the grace of judicial action." *In re Omegas Group, Inc.*, 16 F.3d at 1449. Dismissing several courts of appeals rulings recognizing constructive trusts in bankruptcy as "silly," the court went on to hold that a constructive trust "does not exist until a plaintiff obtains a judicial decision ... 'impressing' defendant's ... assets with a constructive trust." *Id.* at 1449–51. The court found that unless the plaintiff has a claim to property judicially impressed with a constructive trust prepetition, the asset is not excluded from the debtor's bankruptcy estate under § 541(d). *Id.* at 1451.

Of course, in the Fourth Circuit, the case of *Mid–Atlantic Supply Co.*, remains authority for the allowance of an appropriate constructive trust claim in bankruptcy. However, cases such as *Omegas* have raised new issues not previously considered in this circuit and which should be addressed.

The Sixth Circuit *Omegas* opinion cited no case authority for its initial conclusion that a constructive trust arises only upon a judicial determination, referring instead to Professor Emily L. Sherwin's law review article.[5] *In re Omegas Group, Inc.*, 16 F.3d at 1449; *see also* Sherwin, *supra,* at 301. Actually, the court's finding of when a constructive trust arises under common law is the minority view under a split of authority on the issue. *See* George G. Bogert & George T. Bogert, *The Law of Trusts and Trustees* § 472 (rev. 2d ed. 1978 & Supp.1996); 5 Austin W. Scott & William F. Fratcher, *The Law of Trusts* § 462.4 (4th ed. 1989 & Supp.1996); *In re General Coffee Corp.*, 828 F.2d at 701–02 (considering and specifically rejecting the interpretation of constructive trusts adopted by the Sixth Circuit in *Omegas* ).

A crucial element to the issue of constructive trusts in bankruptcy concerns the treatment of a debtor's property interests under state law. In *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), the Supreme Court resolved a split among the circuits concerning the determination of a bankruptcy debtor's property interests by holding that

> [p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding....

*Id.* at 55, 99 S.Ct. at 918. The issue in *Butner* concerned the bankruptcy treatment of a mortgagee's interest in rents and profits from the security. In its ruling the Supreme Court overruled those circuits which had imposed, for purposes of equity, a rule in bankruptcy cases at variance with the state law treatment of rents and profits. *Id.* at 55–57, 99 S.Ct. at 918–19; *see also Barnhill v. Johnson*, 503 U.S. 393, 397–98, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992); *American Bankers Ins. Co. v. Maness*, 101 F.3d 358, 363 (4th Cir.1996).

The court of appeals in *Omegas* recognized that *Butner* requires the determination of a debtor's property rights to be made under state law but then went on to state "once that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate." *In re Omegas Group, Inc.*, 16 F.3d at 1450. While this statement contains some truth, nowhere does the Code or any other federal law, intimate

---

5. In her lengthy and well reasoned article, Sherwin argues for an approach to the treatment of constructive trusts in bankruptcy which is different from the treatment previously recognized in most reported case decisions: "[T]he right to a constructive trust in bankruptcy should depend on whether *creditors* would be unjustly enriched by sharing in the property the plaintiff claims." Sherwin, *supra,* at 306 (emphasis in original). She recognizes the different legal approaches to constructive trusts, and in the main her conclusions, albeit persuasive, reflect what she believes the law "should be" in bankruptcy. However, she nowhere states that a constructive trust is a "legal fiction" or that "it does not exist until a plaintiff obtains a judicial decision ... impressing defendant's property or assets with a constructive trust." *In re Omegas Group, Inc.*, 16 F.3d at 1449, 1451.

Professor Sherwin recognizes that in the academic community, "[t]here is substantial debate ... about the proper scope of federal bankruptcy policy" and acknowledges the point of view of some that "bankruptcy courts should not disturb state law entitlements, except as necessary for efficient management of assets" in bankruptcy. Sherwin, *supra,* at 361–364. *See also* Thomas H. Jackson, *The Logic and Limits of Bankruptcy Law* 94–96 (1986).

that § 541(d) excludes some equitable interests but not others from the estate. That must depend upon the nature of the interest under state law. Moreover, it has been held that the legislative history of the section indicates that Congress "clearly intended the exclusion created by section 541(d) to include not only funds held in express trust, but also funds held in constructive trust." *Official Comm. of Unsecured Creditors v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 997 F.2d 1039, 1059 (3d Cir.1993), *cert. denied*, 510 U.S. 1110, 114 S.Ct. 1050, 127 L.Ed.2d 372 (1994); *see also Mitsui Mfrs. Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.)*, 13 F.3d 321, 324 (9th Cir.1994); *In re Mid–Atlantic Supply Co.*, 790 F.2d at 1124–25; *but see* Sherwin, *supra*, at 314–15 n. 74 (criticizing the courts' reliance upon the legislative history of § 541(d) to support constructive trust claims based upon the principle of unjust enrichment).

In summary, *Omegas* held that a constructive trust, even if a valid interest under state law, is at such fundamental odds with the philosophy of the Bankruptcy Code that it can never be recognized in bankruptcy. Put simply, the court felt that the policy underlying the Code prohibits an equitable remedy from elevating one unsecured claim over another and thereby thwarting the type of ratable distribution provided under bankruptcy law.[6] *In re Omegas Group, Inc.*, 16 F.3d at 1451. It is notable, however, that Professor Sherwin, whose law review article *Omegas* relied so heavily upon, asserts that the "time of creation" of a constructive trust "is a false

issue that should not enter into the courts' analyses." Sherwin, *supra*, at 326. Rather, the constructive trust claimant's position should depend upon the potential unjust enrichment of other *creditors* in the bankruptcy. *Id.* at 306, 326.

■ *Omegas* notwithstanding, I can only conclude that the concept of constructive trust is not inherently incompatible with the fair treatment of creditors in bankruptcy. I further find that it is within the discretion of the bankruptcy court to allow a constructive trust claim that is otherwise compatible with applicable state property law. *See In re Morken*, 182 B.R. at 1022. However, a constructive trust "should not be impressed cavalierly." *In re Omegas Group, Inc.*, 16 F.3d at 1451 (citing *Neochem Corp. v. Behring Int'l, Inc. (In re Behring Int'l, Inc.)*, 61 B.R. 896, 902 (Bankr.N.D.Tex.1986)).

## CONSTRUCTIVE TRUST CLAIMS UNDER VIRGINIA LAW

Since I find that the term "equitable interest" in Bankruptcy Code § 541(d) may well encompass a constructive trust under state law, the next determination must be whether the plaintiffs here hold constructive trusts under the Virginia law which ought to be enforced in this case.[7]

■ Section 541(d) removes from the bankruptcy estate any property in which "the debtor holds, *as of the commencement of the case*, only legal title and not an equitable interest." 11 U.S.C. § 541(d) (emphasis added). The first inquiry is whether under Vir-

---

**6.** In *Omegas* the plaintiff and the debtor had engaged in a "type of joint venture" under which the plaintiff advanced cash to the debtor for the purchase of computers. The debtor's financial problems prevented it from fully complying with the agreement. In bankruptcy, the plaintiff sought to impose a constructive trust on funds it had advanced. The facts related in the Sixth Circuit opinion reveal that the debtor had commingled funds with its other cash but does not reveal whether the cash was traceable as would be required under Virginia law. *In re Omegas Group, Inc.*, 16 F.3d at 1445–46.

On its facts, I do not disagree with the result in *Omegas*. The court fairly characterized the plaintiff as an unsecured creditor attempting to elevate itself over others by use of an equitable remedy not appropriate in bankruptcy. (In a

footnote, the court expressed serious doubt that the creditor held a constructive trust under the applicable state law of Kentucky. *Id.* at 1450 n. 7.)

**7.** Under Virginia's choice of law rules, the law of the place of the transaction or the place where the right is acquired governs questions of substantive law, while the law of the place where the action is brought governs questions of procedure and remedy. *See Compliance Marine, Inc. v. Campbell (In re Merritt Dredging Co.)*, 839 F.2d 203 (4th Cir.1988), *cert. denied*, 487 U.S. 1236, 108 S.Ct. 2904, 101 L.Ed.2d 936 (1988); *Frye v. Commonwealth*, 231 Va. 370, 345 S.E.2d 267, 272–73 (1986). Here, regardless of whether a constructive trust is characterized as an issue of substance or procedure, the law of Virginia will apply.

ginia law the constructive trusts alleged by Chemical and Old Republic gave them, pre-petition, an equitable property interest in the Mid–Atlantic Burke & Herbert bank account. As mentioned previously, two major treatises on trust law recognize that "[t]here is a difference of opinion as to when the constructive trust arises" or, alternatively, when the beneficiary of a constructive trust acquires an interest in the property. George G. Bogert & George T. Bogert, *The Law of Trusts and Trustees* § 472, at 30 (rev. 2d ed. 1978 & Supp.1996); *see also* 5 Austin W. Scott & William F. Fratcher, *The Law of Trusts* § 462.4 (4th ed. 1989 & Supp.1996); Sherwin, *supra*, at 310–17. These authorities suggest that most cases have held that a constructive trust arises at the time of wrongdoing by the defendant.

■ In Virginia, constructive trusts are trusts

which, independently of the intention of the parties, the law creates under certain circumstances in order to prevent fraud or injustice that would otherwise ensue. These trusts are not based upon the presumed intention of the party. On the contrary, they exist contrary to the intention. They are trusts which are forced upon the conscience of the party by operation of law.

19 *Michie's Jurisprudence of Virginia and West Virginia* Trusts and Trustees § 48, at 121 (1991); *see also Richardson v. Richardson,* 242 Va. 242, 409 S.E.2d 148, 150 (1991); *Leonard v. Counts,* 221 Va. 582, 272 S.E.2d 190, 195 (1980); 1 Frederick D.G. Ribble, *The Law of Real Property (Based on Minor's Institutes)* § 462, at 616 (2d ed. 1928). Constructive trusts "occur not only where property has been acquired by a fraud or improper means, but also where it has been fairly and properly acquired, but it is contrary to principles of equity that it should be retained, at least for the acquirer's own benefit." *Leonard,* 272 S.E.2d at 195.

Although the court has found no Virginia Supreme Court cases in which the time of creation of a constructive trust was a specific

issue, the Fourth Circuit has stated in dicta that a constructive trust is created not when decreed by a court but when the constructive trustee comes under a duty to make restitution. In *Capital Investors Co. v. Morrison,* 800 F.2d 424 (4th Cir.1986), the court quotes from Scott's *Law of Trusts* as follows:

Where the title to property is acquired by one person under such circumstances that he is under a duty to surrender it, a constructive trust immediately arises. . . . It would seem that there is no foundation whatever for the notion that a constructive trust does not arise until it is decreed by a court. It arises when the duty to make restitution arises, not when the duty is subsequently enforced.

*Morrison,* 800 F.2d at 427 n. 5 (quoting 5 Scott, *supra,* at § 462.4).

The dicta in *Morrison* is consistent with Virginia cases which in general seem to hold the view that the constructive trust arises at the time of the trustee's acquisition of property for another, as, for example, when the constructive trustee takes property in his own name which he was obligated to purchase for another.[8] *See Leonard,* 272 S.E.2d at 195–96; *Pope v. Prince's Administrator,* 105 Va. 209, 52 S.E. 1009 (1906) (holding that the individual who sold an infant's land became constructive trustee of sale proceeds upon receipt); *see also In re Mid–Atlantic Supply Co.,* 790 F.2d at 1121 (holding that a subcontractor-debtor received a check in constructive trust and allowing the trust claim in the bankruptcy).

From these authorities, the court concludes that under Virginia law, Dameron or Mid–Atlantic took the plaintiffs' mortgage loan funds impressed with constructive trusts. At the very latest the trusts were created several days after the funds were deposited in Mid–Atlantic's bank accounts when it failed to disburse the funds as required by the lenders' closing instructions.

If a constructive trust is the proper remedy in this case, then the equitable title held by Chemical and Old Republic would have

---

**8.** In *In re General Coffee Corp.,* 828 F.2d at 702, a bankruptcy decision, Judge Godbold of the 11th Circuit drew a similar analogy from Florida deci-

sions in holding that under Florida law a constructive trust arose upon acquisition.

arisen pre-petition either at the time Mid–Atlantic received the lenders' funds or when it misappropriated the funds, and these funds as trust corpus may be excluded to the extent traceable from the claims of other creditors under § 541(d).

ALLOWABILITY OF THE PLAINTIFFS' CONSTRUCTIVE TRUST CLAIMS

■ Should the court recognize the constructive trust claims in this bankruptcy case? It is not disputed that "Dameron was engaged in a scheme of misappropriating funds provided by lenders for real estate settlements." (Trustee's Proposed Undisputed Facts and Conclusions of Law at 6.) The funds were received by Dameron and Mid–Atlantic in escrow subject to specific instructions for disbursement, and it would be difficult to find a more flagrant case of the fraudulent mishandling of the money of another.

"It is well settled that where one person sustains a fiduciary relation to another he can not acquire an interest in the subject matter of the relationship adverse to such other party. If he does so equity will regard him as a constructive trustee and compel him to convey to his associate a proper interest in the property or to account to him for the profits derived therefrom."

*Greenspan v. Osheroff*, 232 Va. 388, 351 S.E.2d 28, 37 (1986) (quoting *Horne v. Holley*, 167 Va. 234, 188 S.E. 169, 172 (1936)).

I find that the plaintiffs' constructive trusts claims should be allowed as such in this case to the extent the funds are traceable. It would be grossly unfair to the plaintiffs under the present circumstances to require them to share what are clearly their funds with other creditors in this case.

ESCROW CLAIM

■ There is an additional basis to rule in plaintiffs' favor here that makes it unnecessary for the court to consider the problematic constructive trust analysis. As the court has previously found as an undisputed fact, the subject funds were received by Mid–Atlantic in its Burke & Herbert account under escrow agreements with each of the lenders. Ac-cording to the court's tracing analysis below, these funds (with some reduction) remain in the frozen account.

*Black's Law Dictionary* 545 (6th ed. 1990) defines an escrow as follows:

A legal document (such as a deed), money, stock, or other property delivered by the grantor, promisor or obligor into the hands of a third person, to be held by the latter until the happening of a contingency or performance of a condition, and then by him delivered to the grantee, promisee or obligee.

The depositary of an escrow is generally held to be an agent or trustee of both parties. 30A *C.J.S.* Escrows § 10 (1992 & Supp.1996); *see also SMP, Ltd. v. Syprett, Meshad, Resnick & Lieb, P.A.*, 584 So.2d 1051 (Fla.Dist.Ct.App.1991); 1 *Restatement (Second) of Trusts* § 32(1) cmt. d (1959).

[6] In Virginia, the parties to an escrow hold a principal-agent relationship with the depositary as agent, and the agent thus serves as a fiduciary to the principals with respect to the agency. *Winslow v. Scaife*, 219 Va. 997, 254 S.E.2d 58, 60 (1979); 1A *Michie's Jurisprudence of Virginia and West Virginia* Agency § 57, at 715–716 (1993).

■ As fiduciary to the lenders under the escrow agreements, the debtors could not have acquired an interest in the lenders' loan proceeds deposited to the MidAtlantic account. *Greenspan*, 351 S.E.2d at 37. In bankruptcy, funds held by a debtor as a depositary of an escrow may be excluded from the bankruptcy estate. *Research Planning, Inc. v. Segal (In re First Capital Mortgage Loan Corp.)*, 917 F.2d 424, 427 (10th Cir.1990); *Gulf Petroleum S.A. v. Collazo*, 316 F.2d 257, 261 (1st Cir.1963); *Shron v. M & G Promo Service, Ltd. (In re Anthony Sicari, Inc.)*, 144 B.R. 656, 662 (Bankr.S.D.N.Y.1992), *aff'd*, 151 B.R. 60 (S.D.N.Y.1993). Of course, the result is different if the claimant cannot trace the funds. *See In re Schmid*, 53 B.R. 70 (Bankr.E.D.Pa.1985). Conversely, funds or property that a debtor as principal has transferred to an escrow prepetition are not property of the estate except as might be provided by the escrow.

*Carlson v. Farmers Home Admin. (In re Newcomb)*, 744 F.2d 621 (8th Cir.1984); *see* R. Alan Pritchard, Jr., *Escrow Accounts In Bankruptcy*, 29 Tenn.Bar J., Nov.–Dec. 1993, at 21 (1994); Thomas M. Byrne, *Escrows and Bankruptcy*, 48 Bus. Law 761 (1993).

In reality, Mid–Atlantic's Burke & Herbert account contains the plaintiffs' money under an escrow. The funds are not Mid–Atlantic's or Dameron's. To the extent traceable, the plaintiffs should not have to share these funds with other creditors in the bankruptcy case.

### TRACING

■ In order to be entitled to the benefit of a constructive trust under Virginia law, "a claimant's money must be 'distinctly traced' into the chose in action, fund, or other property which is to be made the subject of the trust." *Crestar Bank v. Williams*, 250 Va. 198, 462 S.E.2d 333, 335 (1995). In this tracing requirement, the law of Virginia "comports with overall policy concerns of bankruptcy law and justifies the preferential treatment that constructive-trust beneficiaries receive over unsecured creditors" in a bankruptcy distribution. *Haley. Chisholm & Morris, Inc. v. Parrish*, 127 B.R. 366, 370 (W.D.Va.1991).

■ The facts relating to the pertinent transfers to and from Dameron's MidAtlantic bank account are set out in detail above. Tracing the funds is somewhat hampered by the fact that Mid–Atlantic commingled the monies provided by the defrauded lenders with its own funds in the account held with Burke & Herbert. Fortunately, the lowest intermediate balance rule provides an effective guide,[9] allowing the court to assume that funds subject to a constructive trust will be withdrawn last from a commingled account. *In re Columbia Gas Sys., Inc.*, 997 F.2d at 1063. If trust funds have been removed, though, the rule does not permit them to be replenished by subsequent deposits. *Id.*

On January 24, 1996, before any funds from the defrauded lenders were deposited into Mid–Atlantic's Burke & Herbert account, the account held a positive balance of $7,846.60. On January 25 and 26, 1996, the account suffered an aggregate net loss (debit) of $648.52 (due to miscellaneous action unrelated to the lenders) and as a result held only $7,201.08 of Mid–Atlantic's own funds. On January 29, 1996, the account was debited another $12,511.13 (again, due to action unrelated to the lenders). This depleted Mid–Atlantic's own funds and left it with an account deficit of $5,313.05. As of this date, however, funds from three settlements had been deposited into the account: (1) $71,-475.40 (check deposit on January 25, 1996) from Shelter in connection with the "Browning Settlement"; (2) $41,619.20 (wire transfer received January 29, 1996) from Mortgage Access in connection with the "Hedayaty Settlement"; and (3) $180,749.82 (wire transfer received January 29, 1996) from Chemical in connection with the "Ruffin Settlement." Applying the lowest intermediate balance rule, the Shelter deposit of January 25, 1996, must be reduced by Mid–Atlantic's deficit of $5,313.05. Thus, on January 29, 1996, the following funds are adequately traced: (1) $66,162.35 to Shelter; (2) $41,619.20 to Mortgage Access; and (3) $180,749.82 to Chemical.

No change in the account occurred after January 29, 1996, except for the deposit of another $164,807.10 from Chemical in connection with the "Abercrombe Settlement." Of course, with no deductions between the time of this deposit and the entry of the decree freezing the account, the full amount relating to that settlement remained in the account and can be traced. Accordingly, with the substitution in this proceeding of Old Republic for Shelter and Mortgage Access, the court finds that funds in Mid–Atlantic's Burke & Herbert account are traced as follows: $107,781.55 in funds of Old Republic and $345,556.92 in funds of Chemical.

A separate order will be entered denying the trustee's summary judgment motion and

---

9. Though never expressly used in this context by courts in the Fourth Circuit, they have employed the lowest intermediate balance rule when tracing proceeds under Article 9 of the Uniform Commercial Code, *Sony Corp. v. Bank One, W.Va.*, 85 F.3d 131 (4th Cir.1996), and in civil forfeiture proceedings, *In re Moffitt, Zwerling & Kemler, P.C.*, 875 F.Supp. 1152 (E.D.Va.1995), *aff'd in part, rev'd in part*, 83 F.3d 660 (4th Cir.1996).

granting that of the plaintiffs. The court will further order the imposition of constructive trusts in favor of plaintiffs against the Mid–Atlantic Burke & Herbert account in the amounts stated in the preceding paragraph. The trust sums will also include any interest actually earned on these sums since the account was frozen.

Counsel for the plaintiff is requested to submit a proposed judgment order in conformity with this opinion.