**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for BankUnited, FSB, Plaintiff,**

**v.**

**FLORIDIAN TITLE GROUP INC. and First American Title Insurance Company, Defendants.**

**Case No. 12–21890–CIV.**

United States District Court,
S.D. Florida,
Miami Division.

Sept. 17, 2013.

George Thomas Breur, Robert Allen Hingston, Heather Marie Jonczak, Welbaum Guernsey, Coral Gables, FL, Orlando J. Villalba, Mortgage Recovery Law Group, Glendale, CA, Lindsey Fallon Thurswell, Welbaum Guernsey Hingston et al., Coral Gables, FL, Michael Jay Rune, II, Welbaum Guernsey Hingston Greenleaf & Gregory, Miami, FL, for Plaintiff.

Charles D. Price, Brouse, McDowell, LPA, Cleveland, OH, Christopher F. Swing, John C. Fairweather, Lisa S. Delgrosso, Lucas M. Blower, Nicholas P. Capotosto, Brouse McDowell, LPA, Akron, OH, Stephen Carey Villeneuve, Terrence Russell, Fowler White Boggs, Ft. Lauderdale, FL, for Defendants.

## ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT FLORIDIAN TITLE GROUP'S MOTION FOR SUMMARY JUDGMENT

FEDERICO A. MORENO, Chief Judge.

THE COURT denies the Defendant's Motion for Summary Judgment. Magistrate Judge Otazo–Reyes filed a Report and Recommendation. The Court has reviewed the entire file and record, has made a *de novo* review of the issues including the objections to the Magistrate Judge's Report and Recommendation, and adopts the Report and Recommendation.

## I. Background

The Plaintiff filed a 17–count complaint against Floridian Title Group, Inc. ("Floridian Title") and First American Title Insurance Co.[1] The case stems from five mortgage loans made by BankUnited, FSB. BankUnited was closed by the Office of Thrift Supervision on May 21, 2009, and the FDIC was appointed as the receiver for BankUnited. The five mortgage loans at issue were made to Gustavo Perchik

(the "Gustavo Loan"), Dario Perchik (the "Dario Loan"), Mario Berstein (the "Berstein Loan"), Beatriz Gamburg (the "Gamburg Loan"), and Ramiro I. Paz Carrazco (the "Carrazco Loan"). Defendant Floridian Title served as the closing agent on all five transactions. The properties located in all but the Carrazco Loan were located at the same townhouse development.

The basic allegations against Floridian Title are that Floridian Title knew that four of the five transactions at issue were not made at arms-length, yet it did not report this to BankUnited despite being required to do so as BankUnited's closing agent; that Floridian Title violated the provisions in BankUnited's Closing Instructions which provided in relevant part that the closing agent was required to adhere to the instructions of "(a) no 'secondary financing' unless specifically authorized, (b) no credits to be paid on behalf of the borrowers without prior authorization from BankUnited's closing department, and (c) no cash back allowed to borrower(s) unless specifically authorized within the Funding Authorization section of the closing instructions;" and that Floridian Title filled out false HUD–1 forms that contained material misrepresentation. Based on the Report & Recommendations Undisputed Facts,[2] Elias Perchik was the principal of Real Estate Investment II ("RED II"), the seller involved in the Gustavo and Dario Loans, and he was also the principal of PE Investments 1, LLC ("PE"), the seller in the transaction under-

---

1. Plaintiff Federal Deposit Insurance Corporation and Defendant First American Title Insurance Company have also filed cross-motions for summary judgment, but these motions were the subject of a separate Report and Recommendations and will be addressed in a separate Order.

2. Defendant Floridian disputes many of the facts in the Undisputed Facts section of the

Report and Recommendations in its Objections to the R & R. As Plaintiff points out, however, these disputes were made for the first time in the Objections, and the facts were not disputed at the time the parties filed their respective statements of material facts. At best, as Plaintiff argues, these disputes demonstrate that summary judgment is inappropriate.

lying the Berstein Loan. Elias Perchik was also the principal of Real Estate International Investments and Developers, LLC ("REIID"), the seller in the transaction underlying the Gamburg loan. Elias Perchik is the brother of buyers Gustavo Perchik and Dario Perchik, the son of buyer Beatriz Gamburg, and the son-in-law of buyer Mario Berstein. Floridian Title's President is Oscar Grisales, and he and Lorena Pardo were Floridian Title's only officers and directors.

Grisales reviewed the title, reviewed the commitments and closing documents, including the HUD–1 Settlement Statements, and instructed Floridian Title's staff on how to proceed regarding all five transactions. The Plaintiff alleges, and the Report and Recommendation states, that Pardo knew at the time of closings on the Dario Loan and the Gustavo Loan that Gustavo, Dario, and Elias Perchik were brothers. Similarly, the Report and Recommendation states that Pardo knew that Gustavo Perchik was the treasurer of RED II at the time of the closing of the Gustavo Loan, but she did not report it to BankUnited, and the Report and Recommendation further provides that Floridian Title knew of the familial ties of the parties but did not report this knowledge to BankUnited. Floridian Title certified that the HUD–1 Settlement Statement for each loan was "a true and accurate account of the transaction." Floridian Title signed the HUD–1 Settlement Statements, declaring "I have caused, or will cause, the funds to be disbursed in accordance with this statement."

Regarding the Gustavo Loan, Plaintiff has provided evidence that the HUD–1 Settlement Statement reflects that Gustavo Perchik paid $90,000 to close. However, Plaintiff has provided evidence that Floridian Title received no payment from Gustavo Perchik on or around the time the payment was purportedly paid. Regarding the Dario loan, the HUD–1 statement shows that Floridian Title received $85,000 to close the transaction on May 11, 2007, but Plaintiff has provided evidence showing that Floridian Title almost immediately wired $85,000 to La Placita, LLC a company whose manager was allegedly Elias Perchik, and whose registered agent was Grisales, the President of Floridian Title. Regarding the Berstein Loan, Floridian Title provided in the HUD–1 Settlement Statement that Berstein personally paid $120,000 to close the transaction. In a letter dated May 19, 2008, Floridian Title stated that Berstein had deposited the had cleared into its account on March 25, 2006—more than two years before the transaction closed. Finally, regarding the Carrazco loan, Plaintiff contends that Floridian misrepresented that Ramiro I. Paz Carrazco and Helena Gonzales Traconi personally paid $129,800 with $99,816.99 to close. Plaintiff has produced evidence that a wire transfer was altered to show that $120,000 was transferred from the borrower to Floridian's account on August, 9, 2006—years before the transaction closed.

In May 2009, BankUnited was closed and the FDIC stepped in as receiver for BankUnited. On May 21, 2009, the FDIC sold certain BankUnited assets to BankUnited, N.A., ("New Bank") pursuant to a Purchase and Assumption Agreement. Section 3.5 of the Purchase and Assumption Agreement provides in relevant part that "[New Bank] does not purchase, acquire or assume, ... (b) any interest, right, action, claim, or judgment against (i) ... any Person ... retained by the Failed Bank ... arising out of any act or omission of such Person in such capacity, (ii) ... any other insurance policy of the failed Bank, ... or (iv) any other Person whose action or inaction may be related to any loss." The FDIC maintains the position that this section demonstrates that the

claims against Floridian Title were not sold to New Bank and were retained by the FDIC. As detailed in the Report & Recommendations, the FDIC sold or otherwise divested itself of all the properties at issue.

Floridian Title moved for summary judgement [D.E. 46]. The motion was referred to Magistrate Judge Otazo–Reyes. Judge Otazo–Reyes filed her Report and Recommendations [D.E. 126] recommending that this Court deny Defendant Floridian Title's Motion for Summary Judgment. Defendant Floridian Title filed its Objections to the Report and Recommendations [D.E. 127]. The Plaintiff filed its Response [D.E. 130].

## II. Discussion

Floridian Title raises numerous arguments as to why it is entitled to summary judgment. First, Floridian Title claims that the FDIC lacks standing to assert any claims because it sold the loans to a third party. It next claims it is entitled to summary judgment on the FDIC's breach of contract claims because failing to collect a deposit is not the same thing as what it was required to do under the Closing Instructions, which prohibited secondary financing, credits, and cash back to borrowers. It further contends that, on the breach of contract claims, even if it breached, it is entitled to summary judgment because neither BankUnited nor the FDIC suffered any damages. Regarding FDIC's claims of breach of fiduciary duty, Defendant Floridian Title argues that it the disclosures at issue in this case were not required to be made under the duties it undertook. Regarding Plaintiff's claims for Negligent Misrepresentation, Floridian Title claims that the there is no "competent, credible summary judgment evidence that Floridian made any misrepresentation of material fact," and, even if Floridian

Title did make misrepresentations of material fact, BankUnited's reliance on those misrepresentations was not justified. Finally, Defendant claims that the economic loss rule bars all Breach of Fiduciary Duty and Negligent Misrepresentation claims.

Floridian does not address in either its motion for summary judgment or its objections to the Report & Recommendation the crux of the FDIC's argument: that Floridian Title breached the contract by providing false HUD–1 forms and that Floridian Title failed to disclose that the transactions were not conducted at arm's length due to the fact that the parties to the transactions that BankUnited provided loans for were related by familial or business ties, and that Floridian Title knew of the nature of these relationships. The Court notes that Floridian Title devotes nearly half of its Objections to the Report and Recommendations disputing facts that the Magistrate Judge characterized as "undisputed." As Plaintiff has pointed out, these facts were indeed undisputed by Defendant Floridian Title at the time the parties filed their statements of material facts. Additionally, these issues of fact only further show that summary judgment is not warranted. This Court finds nothing wrong with the Magistrate Judge's discussion of Undisputed Facts.

### A. Summary Judgment Standard

Summary judgment is authorized where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the es-

sential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must present more than a scintilla of evidence in support of the nonmovant's position. A jury must be able reasonably to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. Standing

■ Plaintiff's sole contention that Plaintiff lacks standing comes from its reliance on *Wall St. Mortg. Bankers, Ltd. v. Attorneys' Title Ins. Fund, Inc.,* Case No. 1:08–CV–1648–Moreno (S.D.Fla. Sept. 9, 2009). In *Wall Street,* the Magistrate Judge recommended that the Court grant summary judgment to Defendant where the Plaintiff had sold the properties covered by the Closing Protection Letters where the Closing Protection Letters specified that they provided "protection in connection with closing of real estate transaction in which you are to be the lessee or purchaser of an interest in land or a lender secured by a mortgage (including any other security instrument) of an interest in land." *See id.* at 7. The Court adopted the Report and Recommendations, and granted summary judgment because, after having sold the property, Plaintiff no longer had "an interest in land" and was not in privity of contract, and thus, did not have standing.

*Wall Street* is clearly factually distinguishable and provides Defendant Floridian Title no support. In the case at bar, Plaintiff, by virtue of Section 3.5 of the Purchase and Assumption Agreement,

purports to retain the claims against Defendant Floridian Title. Section 3.5 of the Purchase and Assumption Agreement provides in relevant part that "[New Bank] does not purchase, acquire or assume, . . . (b) any interest, right, action, claim, or judgment against (i) . . . any Person retained by the Failed Bank . . . arising out of any act or omission of such Person in such capacity, (ii) . . . any other insurance policy of the failed Bank, . . . or (iv) any opther Person whose action or inaction may be related to any loss." Having retained these claims, Plaintiff has standing to bring this action against Defendant Floridian Title.

## C. Breach of Contract

■ In Counts I, V, IX, XIII, and XIII$_1$ ,[3] Plaintiff alleges that Defendant Floridian Title breached BankUnited's Closing Instructions for each of the loans, which are the contracts at issue. Regarding these counts, Defendant Floridian Title argues that failing to collect a deposit is not the same thing as it was required to do under the Closing Instructions, which prohibited secondary financing, credits, and cash back to borrowers. It further contends that, on the breach of contract claims, even if it breached, it is entitled to summary judgment because neither BankUnited nor the FDIC suffered any damages.

■ In Florida, the elements for a breach of contract are (1) a valid contract, (2) a material breach, and (3) damages. *Beck v. Lazard Freres & Co., LLC,* 175 F.3d 913, 914 (11th Cir.1999); *Leahy v. Batmasian,* 960 So.2d 14, 18 (Fla.Dist.Ct. App.2007). "Generally, so long as Plaintiff has produced some evidence of its injury, the factual determination of damages is one for the jury." *Action Nissan Inc. v.*

---

**3.** In the Complaint, Plaintiff uses the number X, XI, and XIII twice. For clarity, this Court adopts the Magistrate's use of the subscript (1) to the second appearance of each number.

*Hyundai Motor Am.,* 617 F.Supp.2d 1177, 1203 (M.D.Fla.2008).

The FDIC has presented evidence that the BankUnited's Closing Instructions were a valid contract. Under the Closing Instructions, Floridian Title was "engaged to close and disburse this loan in accordance with these Loan documents." Defendant Floridian Title was purportedly required to adhere to the instructions of "(a) no 'secondary financing' unless specifically authorized, (b) no credits to be paid on behalf of the borrower's without prior authorization from BankUnited's closing department, and (c) no cash back allowed to borrower(s) unless specifically authorized within the Funding Authorization section of the closing instruction." The Closing Instructions also provided that Floridian Title was required to complete a HUD–1 Settlement Statement. The Closing Agent "certif[ied] that [she has] read and will comply with all conditions as stipulated on these Loan Closing Documents and Funding Instructions. **Disbursement of the loan proceeds has not occurred.**" On the HUD–1 Settlement Statements, Floridian Title certified that the statement "is a true and accurate account of this transaction. I have caused, or will cause, the funds to be disbursed in accordance with the statement."

Defendant Floridian Title argues that Plaintiff has presented no evidence that it breached the contract. It first argues in its Objections that "the plain meaning of "secondary financing," "credits," and "cash back" do not in any way cover the situation where a closing agent fails to collect a deposit. This argument is misleading, disingenuous, and does not address relevant issues. Plaintiff has not argued that Defendant Floridian merely failed to collect a deposit. Plaintiff's primary argument is that Floridian breached its promise to prepare and submit a HUD–1 statement and that it breached its certification on the HUD–1 statement that the information provided was true and accurate. Plaintiff has provided evidence that the HUD–1 statements were not accurate. Thus, Plaintiff has provided evidence of a breach of the valid contract.

Floridian Title further argues that it was not in breach because the contract between itself and BankUnited did not arise until the Closing Instructions were signed, the down payments were to be made before the Closing Instructions were signed, and thus, Floridian Title cannot be in breach of a contract where the alleged breach occurred before the contract formed. Again, Floridian Title bases its entire argument on issues that are at best tangentially related to the claims before the Court. Under the Closing Instructions, Floridian Title was required to submit a HUD–1 Settlement Statement. On the HUD–1 Settlement Statements, Floridian Title promised that they were true and accurate. Plaintiff has produced evidence that the HUD–1 Settlement Statements were not true and accurate. Thus, the temporal relationship between the receipt or promised receipt of the down payments and Floridian Title's signing of the Closing Instructions is far outside of the realm of relevance.

Defendant argues that FDIC, as assignee of BankUnited, has suffered no damages or the damages suffered are identical to ones that can be pursued in a foreclosure action. On this point, a recent case decided in the Central District of California is instructive. In *Fed. Deposit. Ins. Corp. v. First Am. Title Ins. Co.,* the FDIC brought claims for breach of contract against its title insurance company. *Fed. Deposit Ins. Corp. v. First Am. Title Ins. Co.,* 2011 WL 3737435 at *1 (C.D.Cal. August 24, 2011). The FDIC argued that the failure to make disclosures as to the

buyer's previous transactions and the failure to pick up on certain red flags led it to make a loan it would not have otherwise made. *See id.* at *9. The court held that "the FDIC's evidence indicating it would not have entered into the loan had it known of the other transactions more than adequately meets this standard [of demonstrating enough damages to survive summary judgment.]" *Id.* at *10. Similarly, the Middle District of Florida, in a case with substantially similar facts to those of the case at bar, permitted an action for breach of contract to proceed past the motion to dismiss stage where the closing agent handled numerous closings for Plaintiff, permitted secondary financing, and failed to disclose a material misrepresentation. *Cf. Lehman Bros. Holdings, Inc. v. Hirota,* 2007 WL 1471690 at *1, *6 (M.D.Fla. May 21, 2007).

In the case at bar, Plaintiff has argued that the failure to collect a down payment and material misrepresentations caused it to lend to borrowers it would not have otherwise have lended to and that it was damaged when the borrowers in what it claims was a mortgage fraud scheme defaulted. These are enough allegations of damages to survive a motion for summary judgment.

Finally, Defendant argues that the properties underlying the loans suffered detrimental effects that were unknowable to Defendant, and that it should thus be excused. In its motion for summary judgment, Defendant creates a convoluted analysis comparing the unforeseeable string of events to the traditional Passover Song "Chad Gadya"—"One Little Goat"; in its Objections to the Report and Recommendations, the comparison shifts to a Rube Goldberg Machine.[4] While the imagery Defendant paints may prove powerful when put to music and sung by hard-times balladeers like Bruce Springsteen or Waylon Jennings, its arguments are not persuasive in a court of law. While the issues that afflicted the underlying properties, such as "Chinese Drywall" or the Real Estate Crisis may prove to be mitigating factors, they do not excuse Defendant's breach. *See Action Nissan, Inc. v. Hyundai Motor Am.,* 617 F.Supp.2d at 1203.

For the foregoing reasons, Defendant is not entitled to summary judgment on the breach of contract claims.

### D. Breach of Fiduciary Duty

██ In Counts II, VI, X, X and XIV, Plaintiff claims Floridian Title breached its fiduciary duty. Defendant argues that any duty must be enumerated in the contract.

██ The elements of a claim for breach of fiduciary duty are (1) existence of a fiduciary duty, (2) breach of that duty,

---

4.  The Defendant's Objections read:

    One uncollected deposit. One uncollected deposit left the borrower with insufficient "skin-in-the game." The real estate down turn came that devalued the property of the borrower with insufficient "skin-in-the game" because the closing agent failed to collect the deposit. The property devaluation led the borrower to try to rent the premises. The attempted premises rental led to the discovery of Chinese Drywall further devaluing the property and preventing its rental. The reduction in anticipated income from the property declining in value led to the inability of the borrower to make the mortgage payments. The inability of the borrower to make the mortgage payments led to the borrower's default. The borrower's default led to the bank's failure. The bank's failure led to the FDIC's takeover. The FDIC's take-over led to a Loss–Share Agreement with New BankUnited. The Loss Share Agreement with new Bank United gave that bank no incentive to try to obtain deficiency judgments against defaulting borrowers or to try to obtain market values for the property. All that foreseeable from one allegedly uncollected deposit?

and (3) damages proximately caused by that breach. *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla.2002). "Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and agent manifests assent or otherwise consents so to act." *Cheney v. IPD Analytics, L.L.C.*, 2009 WL 1298405 at *5 (S.D.Fla. Apr. 16, 2009) (*citing* Restatement (Third) of Agency § 1.01 (2006)). "Typically, an agent has a duty to disclose to a principal all material facts relevant to the agency." *SMP, Ltd. v. Syprett, Meshad, Resnick & Lieb, P.A.*, 584 So.2d 1051, 1054 (Fla.Dist.Ct.App. 1991).

It is undisputed that Defendant Floridian served as Plaintiff's closing agent. As an agent, Floridian title owed a fiduciary duty to the Plaintiff. *See Cheney v. IPD Analytics, L.L.C.*, 2009 WL 1298405. The evidence shows that Floridian Title failed, at a minimum, to disclose that the Loan transactions were not negotiated at armslength. If true, this would permit a reasonable trier of fact to find that Floridian Title breached its fiduciary duty.

Defendant Floridian Title quotes Judge Ungaro in *Vallina v. Mansiana Ocean Residences* for the proposition that it owes no fiduciary duty. *Vallina v. Mansiana Ocean Residences*, Case No. 1:10–CV–21506 at p. 9 (S.D.Fla. June 17, 2011) (Ungaro, J.). This case, however, is distinguishable on its facts. In that case, Defendant Fidelity was both the escrow agent and the title insurer. Defendant Fidelity became involved in litigation with Defendant Mansiana, and did not disclose this to Plaintiff. The litigation between Plaintiff and Defendant Fidelity in that case arose out of Defendant Fidelity's role as escrow agent, not as title insurer. Judge Ungaro granted the motion to dismiss the breach

of fiduciary duty claim because "the existence of litigation relating to Fidelity's role as Mansiana's insurer is not a material fact relevant to Fidelity's role as escrow agent for Plaintiff and Mansiana." *Id.* at 9.

All other arguments raised by Defendant in its objections to the Report and Recommendations regarding fiduciary duty raise additional questions of fact, demonstrating that summary judgment is not appropriate, and will thus not be discussed here.

**E. Negligent Misrepresentation Claims**

In Counts III, VII, XI, XI and XV, Plaintiff makes claims against Defendant Floridian Title for negligent misrepresentation. Under Florida law, a claim for negligent misrepresentation requires (1) a misrepresentation of material fact; (2) a representer who either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) a representer who intended to induce another to act on the misrepresentation; and (4) an injury that resulted to a party acting in justifiable reliance upon the misrepresentation." *Coral Gables Dist., Inc. v. Milich*, 992 So.2d 302, 303 (Fla.Dist.Ct.App.2008). To prevail on a claim for negligent misrepresentation, a plaintiff must show that he justifiably relied on the misrepresentation. *Bankers Trust Co. v. Basciano*, 960 So.2d 773, 778 (Fla.Dist.Ct.App.2007) (*citing Johnson v. Davis*, 480 So.2d 625, 627 (Fla. 1985)). "An action for negligent misrepresentation cannot be maintained if an investigation by the recipient of the information would have revealed the falsity of the information." *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So.2d 334, 337 (Fla. 1997).

In its objections, Defendant Floridian Title reiterates its argument that *Allocco v. City of Coral Gables* stands for the proposition that Plaintiff's reliance on any misrepresentations were not justifiable because it could have ascertained the information itself. *See Allocco v. City of Coral Gables*, 221 F.Supp.2d 1317, 1357 (S.D.Fla. 2002). However, the Plaintiffs in *Allocco* actually possessed the information that was allegedly misrepresented. *Id.* at 1358–59. Thus, it is clearly distinguishable from the case at bar. The Magistrate Judge rejected this argument, and this Court does as well.

Additionally, other than an unsupported claim in its Motion for Summary Judgment that BankUnited conducted independent investigations and should have discovered the not-at-arm's length nature of the transactions, Defendant Floridian has not directed this Court to any evidence in the voluminous record that would indicate that BankUnited knew of the relationship or that an investigation would have uncovered it. Thus, its claim for summary judgment on this point should be denied.

### F. Defendant Floridian's Economic Loss Rule Arguments

In its Motion for summary judgment, Defendant Floridian Title argued that the economic loss rule bars the FDIC's Breach of Fiduciary Duty and Negligent Misrepresentation claims. However, as the Magistrate Court correctly noted, the Florida Supreme Court recently held that "the economic loss rule applies only in the products liability context." *Tiara Condominium Ass'n, Inc. v. Marsh & McLennan, Cos., Inc.*, 110 So.3d 399, 407 (Fla.2013). This case is not a products liability case. Thus, the economic loss rule does not apply.

In its Objections to the Report and Recommendations, Defendant argues that the tort claims are inextricably intertwined with breach of contract claims, and thus are barred. Defendant cites no support for this proposition other than the fact that this legal principle was "formerly embodied in the economic loss rule." Defendant is apparently operating under the assumption that it can unilaterally rebrand the Economic Loss Rule as the Inextricable Intertwining Rule and that the Court will buy this otherwise defective product. The Court will make no such purchase. The Economic Loss Rule applies only in the products liability context and the this Court declines to rename the Economic Loss Rule.

### III. Conclusion

Based on the foregoing arguments, the Court adopts the Magistrate's Report and Recommendation. Defendant Floridian Title's Motion for Summary Judgment is hereby DENIED.

### REPORT AND RECOMMENDATION RE: D.E. 46

ALICIA M. OTAZO–REYES, United States Magistrate Judge.

THIS CAUSE came before the Court upon Defendant Floridian Title Group, Inc.'s ("Floridian Title") Motion for Summary Judgment [D.E. 46]. This case was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Federico A. Moreno, Chief United States District Judge [D.E. 50]. The undersigned held a hearing on this motion on April 26, 2013. For the reasons stated below, the undersigned RESPECTFULLY RECOMMENDS that Floridian Title's Motion for Summary Judgment [D.E. 46] be DENIED.

### PROCEDURAL BACKGROUND

BankUnited, FSB ("BankUnited") was a federally chartered savings bank with its

principal place of business in Coral Gables, Florida. BankUnited was in the business of, among other things, funding mortgage loans. On May 21, 2009, BankUnited was closed by the Office of Thrift Supervision and the Federal Deposit Insurance Corporation ("FDIC") was appointed Receiver for BankUnited pursuant to 12 U.S.C. § 1821.

The FDIC brings this action in its capacity as Receiver for BankUnited in connection with five mortgage loans that were made by BankUnited prior to its demise to: Gustavo Perchik (the "Gustavo Loan"); Dario Perchik (the "Dario Loan"); Mario Berstein (the "Berstein Loan"); Beatriz Gamburg (the "Gamburg Loan") and Ramiro I. Paz Carrazco (the "Carrazco Loan") (collectively, the "Loans"). Defendant Floridian Title served as the closing agent on all five loans. Defendant First American Title Insurance Company ("First American") issued title insurance policies as to only two of the loans, namely, the Gustavo Loan and the Dario Loan.

The FDIC's claims against Floridian Title are as follows:

Count I: Breach of Contract—Gustavo Loan

Count II: Breach of Fiduciary Duty—Gustavo Loan

Count III: Negligent Misrepresentation—Gustavo Loan

Count V: Breach of Contract—Dario Loan

Count VI: Breach of Fiduciary Duty—Dario Loan

Count VII: Negligent Misrepresentation—Dario Loan

Count IX: Breach of Contract—Berstein Loan

Count X: Breach of Fiduciary Duty—Berstein Loan

Count XI: Negligent Misrepresentation—Berstein Loan

Count XIII: Breach of Contract—Gamburg Loan

Count $X_1$: Breach of Fiduciary Duty—Gamburg Loan

Count $XI_1$: Negligent Misrepresentation—Gamburg Loan

Count $XIII_1$: Breach of Contract—Carrazco Loan

Count XIV: Breach of Fiduciary Duty—Carrazco Loan

Count XV: Negligent Misrepresentation—Carrazco Loan [1]

Floridian Title has moved for summary judgment as to all the claims against it. Initially, Floridian Title contends that the FDIC lacks standing to assert any of the claims because it sold the Loans to a third party. Floridian Title further contends that the FDIC has failed to state any cognizable breach of contract claims in Counts I, V, IX, XIII and $XIII_1$, and that, in any event, the FDIC has suffered no damages arising from Floridian Title's alleged breaches. As to the claims for breach of fiduciary duty asserted in Counts II, VI, X, $X_1$ and XIV, Floridian Title essentially argues that there was no fiduciary relationship between it and BankUnited and, in any event, there is no basis for such claims. As to the claims for negligent misrepresentation asserted in Counts III, VII, XI, $XI_1$ and XV, Floridian Title posits that it did not make any actionable material misrepresentations upon which BankUnited justifiably relied. Floridian Title further argues that all of the tort claims are barred because they are not independent of the contracts between

---

**1.** Counts IV and VIII are asserted against First American and are not relevant to this Report and Recommendation. There is no

Count XII. Because the numbers X, XI and XIII were used twice, the subscript (1) has been appended to each second appearance.

the parties. As more fully set forth below, the undersigned concludes that Floridian Title is not entitled to summary judgment on any of these grounds.

## STANDARD OF REVIEW

A motion for summary judgment should be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Moore ex rel. Moore v. Reese,* 637 F.3d 1220, 1232 (11th Cir.2011). In considering a motion for summary judgment, a court is to view the facts and draw "all reasonable inferences in favor of the nonmoving party." *Id.* at 1231. "All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party." *Pippin v. Nat'l Union Fire Ins. Co.,* 845 F.Supp. 849, 850 (M.D.Fla.1994).

## UNDISPUTED MATERIAL FACTS

### A. The individuals and entities involved in the BankUnited loans

1. In 2008, BankUnited funded the Gustavo Loan, the Dario Loan, the Berstein Loan, the Gamburg Loan, and the Carrazco Loan (hereafter, the "Loans").

2. Elias Perchik was the principal of Real Estate Investment II ("RED II"), the seller in the real estate transactions underlying the Gustavo Loan and the Dario Loan.

3. Elias Perchik was the principal of PE Investments 1, LLC ("PE"), the seller in the real estate transaction underlying the Berstein Loan.

4. Elias Perchik was the principal of Real Estate International Investments and Developers, LLC ("REIID"), the seller in the real estate transaction underlying the Gamburg Loan.

5. Elias Perchik, Gustavo Perchik and Dario Perchik are brothers.

6. Beatriz Gamburg is Elias Perchik's mother.

7. Mario Berstein was Elias Perchik's father-in-law.

8. Gustavo Perchik was the treasurer of RED II and Dario Perchik was the manager.

9. Floridian Title was the closing agent and performed closing services on the Loans.

### B. Floridian Title's role in the BankUnited loans

10. Oscar Grisales ("Grisales") is Floridian Title's attorney and president.

11. Grisales and Lorena Pardo ("Pardo") were the only two officers and directors of Floridian Title.

12. Grisales' involvement with the Loans consisted of reviewing the title, reviewing the commitments and closing documents, including the HUD–1 Settlement Statements, and instructing Floridian Title's staff on how to proceed.

13. Pardo knew at the time of the closings on the Dario Loan and the Gustavo Loan that Gustavo Perchik and Dario Perchik were Elias Perchik's brothers.

14. Pardo also knew that Gustavo Perchik was the treasurer of RED II at the time of the closing on the Gustavo Loan, but did not disclose it to BankUnited.

15. Floridian Title did not disclose to BankUnited that Dario Perchik was the manager of RED II.

16. Floridian Title knew that Beatriz Gamburg was Elias Perchik's mother.

17. Floridian Title never disclosed to BankUnited that Elias Perchik was related to Gustavo Perchik, Dario Perchik, Beatriz Gamburg and Mario Berstein.

18. Grisales signed the real estate purchase agreement underlying the Gustavo Loan on behalf of RED II.

19. Grisales also signed the HUD–1 Settlement Statement on behalf of RED II for the closing on the Gustavo Loan.

20. Grisales signed the real estate purchase agreement underlying the Dario Loan on behalf of RED II.

21. Grisales also signed the HUD–1 Settlement Statement on behalf of RED II for the closing on the Dario Loan.

22. Grisales signed the real estate purchase agreement underlying the Berstein Loan on behalf PE.

23. Elias Perchik signed the HUD–1 Settlement Statement on behalf of PE for the closing on the Berstein Loan instead of Grisales because he accompanied his father-in-law to the closing.

24. Grisales signed the real estate purchase agreement underlying the Gamburg Loan on behalf REIID.[2]

25. Grisales also signed the HUD–1 Settlement Statement on behalf of REIID for the closing on the Gamburg Loan.[3]

### C. Floridian Title's closings on the BankUnited loans

26. For each of the Loans, Floridian Title was required to prepare and submit a HUD–1 Settlement Statement that disclosed all receipts and disbursements.

27. For each of the Loans, BankUnited's Closing Instructions provided, in part, that the closing agent was "to close and disburse this loan in accordance with these Loan Closing and Funding Instructions ... [,]" and required that the closing agent contact the BankUnited designated Closer immediately if there were "any deficiencies or discrepancies with the closing instructions or closing documents ... [.]" [D.E. 66–21, 66–22, 66–23, 66–24, 66–25].

28. For each of the Loans, BankUnited's Closing Instructions required that the closing agent adhere to the following instructions, *inter alia,* when completing the HUD–1 Settlement Statements: (a) no "secondary financing" unless specifically authorized; (b) no credits to be paid on behalf of the borrower(s) without prior authorization from BankUnited's Closing Department; and (c) no cash back allowed to borrower(s) unless specifically authorized within the Funding Authorization section of the closing instructions. *Id.*

29. Floridian Title certified that the HUD–1 Settlement Statement for each of the Loans was "a true and accurate account of this transaction" and further acknowledged: "It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment[.]" [D.E. 66–26, 66–27, 66–28, 66–29, 1–11]. Floridian Title also signed the respective HUD–1 Settlement Statements, declaring "I have caused, or will cause, the funds to be disbursed in accordance with this statement." *Id.*

30. The BankUnited Closing Instructions *do not* state that "The settlement agent must notify us in writing if there are indications that funds to close or the earnest money deposit did not come from borrower."

---

**2.** In this regard, the FDIC's reference to Beatriz Gonzalez is deemed to be to Beatriz Gamburg [D.E. 66 at 11 ¶ 112].

**3.** *Id.*

31. The HUD–1 Settlement Statement for the closing on the Gustavo Loan reflects that the closing occurred on January 4, 2008.

32. On January 4, 2008, Floridian Title signed the closing instructions for the Gustavo Loan and certified: "I hereby certify that I have read and will comply with all conditions as stipulated on these Loan Closing and Funding Instructions. **Disbursement of the loan proceeds has not occurred.**"

33. Floridian Title provided in the HUD–1 Settlement Statement for the closing on the Gustavo Loan that Gustavo Perchik personally paid $90,000 in cash to close.

34. Floridian Title received no deposit from Gustavo Perchik on or around May 4, 2007.

35. The HUD–1 Settlement Statement for the closing on the Dario loan reflects that the closing occurred on January 4, 2008.

36. On January 4, 2008, Floridian signed the closing instructions for the Dario Loan and certified: "I hereby certify that I have read and will comply with all conditions as stipulated on these Loan Closing and Funding Instructions. **Disbursement of the loan proceeds has not occurred.**"

37. Floridian Title provided in the HUD–1 Settlement Statement for the closing on the Dario Loan that Dario Perchik personally paid $85,000 in cash to close.

38. A check for $85,000 for the Dario Loan deposit was deposited on May 11, 2007.

39. A review of Floridian's bank account statements show that Floridian almost immediately wired $85,000 out of its account to La Placita, LLC.

40. Elias Perchik was the manager of La Placita, LLC and its registered agent was Floridian Title's president, Oscar Grisales.

41. The HUD–1 Settlement Statement for the closing on the Berstein Loan reflects that the closing occurred on June 24, 2008.

42. On June 24, 2008,[4] Floridian signed the closing instructions for the Berstein Loan and certified: "I hereby certify that I have read and will comply with all conditions as stipulated on these Loan Closing and Funding Instructions. **Disbursement of the loan proceeds has not occurred.**"

43. Floridian Title provided in the HUD–1 Settlement Statement for the closing on the Berstein Loan that Mario Berstein personally paid $120,000 in cash to close.

44. In a letter dated May 19, 2008, Floridian Title stated that the closing agent held the Mario Berstein deposit in the amount of $120,000, and that the deposit had cleared into its account on March 25, 2006.

45. The HUD–1 Settlement Statement for the closing on the Gamburg Loan reflects that the closing occurred on July 9, 2008.

46. On July 9, 2008, Floridian signed the closing instructions for the Gamburg Loan and certified: "I hereby certify that I have read and will comply with all conditions as stipulated on these Loan Closing and Funding Instructions. **Disbursement of the loan proceeds has not occurred.**"

47. Floridian provided in the HUD–1 Settlement Statement for the closing on the Gamburg Loan that Beatriz Gamburg personally paid $120,000 cash to close.

---

**4.** The FDIC incorrectly gives this date as July 9, 2008 [D.E. 66 at 14 ¶ 146].

48. The HUD–1 Settlement Statement for the closing on the Carrazco Loan reflects that the closing occurred on August 13, 2008.

49. On August 13, 2008, Floridian signed the closing instructions for the Carrazco loan and certified: "I hereby certify that I have read and will comply with all conditions as stipulated on these Loan Closing and Funding Instructions. **Disbursement of the loan proceeds has not occurred.**"

50. Floridian Title provided in the HUD–1 Settlement Statement that Ramiro I. Paz Carrazco personally paid $129,800 and $99,816.99 cash to close.

51. Pursuant to the Closing Instructions, BankUnited performed audits of the loan files for each of the five loan transactions after the closings and no deficiencies were raised.

### D. First American's training materials

52. First American provided title insurance in connection with the real estate transactions underlying the Gustavo Loan and the Dario Loan.

53. First American created and distributed training materials for its closing agents on how to detect and prevent mortgage fraud, and it provided access to these materials to First Floridian.

54. According to First American, the closing agent is the "eyes and ears of the lender."

55. First American's training materials provided that "[b]efore closing, [a closing agent should] verify that [it] ha[s] received the lender's proceeds, as well as all funds due from the buyer, drawn from the buyer's account."

56. The training materials provided that "any unusual cash payouts requested or indicated by the parties" should be disclosed by the closing agent, in writing.

57. The training materials provided that a closing agent should "disclose to lender in writing [ ] if you are aware the transaction is not 'arm's length.' "

58. The training materials provided that: "No Cash In is a type of mortgage fraud which takes place when individuals are purchasing property. The buyer and seller contract for an over-inflated sales price, with the difference to be paid to the buyer at or after closing.... One more thing to watch for is borrowed down payments which are disguised by fraudulent gift letters. If you become aware of any unusual cash payouts to the buyer, exercise great caution and make sure you disclose them to the lender in writing."

59. The training materials provided that "Preventing mortgage fraud is not just a matter of following the lender's closing instructions. If [closing agents] become aware of unethical and/or illegal conduct taking place around [them], [the agents] should take action against it. If [agents] fail to take that required action, [they] may become accomplices to any crimes being committed and may therefore face criminal prosecution."

60. The training materials provided that the HUD–1 Settlement Statement "MUST ALWAYS reflect what actually took place in the transaction. If it doesn't match what really happened, [the closing agent] cannot close, no matter who says...."

61. The training materials provided that "The arch-enemy of people committing mortgage fraud is disclosure. The [HUD–1] provides one of [a closing agent's] prime opportunities to make sure that all material facts of the transaction are disclosed to all parties, including the lender!"

### E. The FDIC's Receivership

62. In or around May 2009, BankUnited was closed and the FDIC was appointed Receiver for BankUnited.

63. On or around May 21, 2009, the FDIC sold certain BankUnited assets to BankUnited N.A. ("New BankUnited") pursuant to a Purchase and Assumption Agreement (the "P & A Agreement") [D.E. 66–17].

64. Section 3.5 of the P & A Agreement, provides, in relevant part: "[New BankUnited] does not purchase, acquire or assume, ... (b) any interest, right, action, claim, or judgment against (i) ... any Person ... retained by the Failed Bank ... arising out of any act or omission of such Person in such capacity, (ii) ... any other insurance policy of the Failed Bank, ... or (iv) any other Person whose action or inaction may be related to any loss[.]" *Id.*

65. The FDIC understands and interprets the P & A Agreement to provide that the claims in this action against Floridian Title were retained by the FDIC and New BankUnited has stated unequivocally that, pursuant to the P & A Agreement, the FDIC retained and still owns those claims.

66. After a foreclosure, New BankUnited sold the real estate property underlying the Gustavo Loan to Raymond C. Griffis, Jr.

67. The real estate property underlying the Gustavo Loan was found to have "Chinese Drywall" which significantly reduced the market value of the property.

68. On December 9, 2011, the FDIC executed an Assignment of the Dario Loan and the underlying mortgage to New BankUnited, who, in turn, assigned them to McCormick 105, LLC.

69. The real estate property underlying the Gamburg Loan was sold for $41,639.67 net to New BankUnited.

70. New BankUnited approved a "short sale" of the Carrazco property for $145,579.04 net to the bank.

71. The real estate properties underlying the Gustavo Loan, the Dario Loan, the Berstein Loan and the Gamburg Loan were all located in the same townhouse development which lacked a homeowner's association, thereby making them less desirable properties.

### DISCUSSION

The undersigned first addresses Floridian Title's contention that the FDIC lacks standing to assert any of its claims because it sold the Loans to New BankUnited. Finding no merit in this argument, the undersigned considers in turn Floridian Title's arguments that it is entitled to summary judgment as to the breach of contract claims, the breach of fiduciary duty claims and the negligent misrepresentation claims.

### 1. Standing

The Undisputed Material Facts establish that, after it was appointed Receiver for BankUnited, the FDIC sold certain BankUnited assets to New BankUnited pursuant to the P & A Agreement. As set forth above, Section 3.5 of the P & A Agreement, provides, in relevant part: "[New BankUnited] does not purchase, acquire or assume, ... (b) any interest, right, action, claim, or judgment against (i) ... any Person ... retained by the Failed Bank ... arising out of any act or omission of such Person in such capacity, (ii) ... any other insurance policy of the Failed Bank, ... or (iv) any other Person whose action or inaction may be related to any loss[.]" Floridian Title acknowledges that, pursuant to this provision, the FDIC

purports to have retained the claims asserted against Floridian Title in this action. *See* Reply [D.E. 83 at 5].[5]

Relying solely on *Wall St. Mortg. Bankers, Ltd. v. Attorneys' Title Ins. Fund, Inc.*, Case No. 1:08–cv–21648 (S.D.Fla. Sept. 9, 2009), Floridian Title argues that the FDIC could not have retained the claims against it as a matter of law. However, *Wall St.* is not dispositive of the FDIC's standing with respect to its claims against Floridian Title. As more fully discussed in the undersigned Report and Recommendation on First American's motion for summary judgment,[6] the *Wall St.* case interpreted the language of the Florida form of Closing Protection Letters ("CPLs"), which made it relevant to the CPL claims for breach of contract the FDIC purportedly retained against First American. Nothing in *Wall St.* supports Floridian Title's contention that it bars the FDIC's purported retention of its claims against Floridian Title, which are not based on CPLs. Therefore, Floridian Title is not entitled to summary judgment on the basis of the FDIC's lack of standing.

### 2. The breach of contract claims

The FDIC alleges that Floridian Title breached BankUnited's Closing Instructions for each of the Loans, which are the contracts at issue in the claims for breach of contract asserted in Counts I, V, IX, XIII and XIII₁. It is undisputed that, as to each of the Loans, Floridian Title:

- certified on the date of each closing that it had read and would comply with all conditions stipulated on the Closing Instructions;

- was required by the Closing Instructions to prepare and submit HUD–1 Settlement Statements that disclosed all receipts and disbursements;

- provided in each of the HUD–1 Settlement Statements that the borrower had personally paid the cash to close amounts; and

- certified on the date of each closing that each such HUD–1 Settlement Statement was "a true and accurate account of this transaction."

The FDIC has adduced facts supporting its contention that the HUD–1 Settlement Statements prepared by Floridian Title were not accurate accounts of the transactions due to irregularities with the cash to close amounts that Floridian Title certified had been paid by each of the borrowers.[7] On this basis alone, Floridian Title is not entitled to a judgment as a matter of law that it did not breach the Closing Instructions for each of the Loans.

Floridian Title's alternative argument is that the FDIC cannot show that it sustained damages flowing from Floridian Title's alleged breaches. According to Floridian Title, the losses that the FDIC claims to have suffered on the Loans are identical to and limited by those that would be pursued in a foreclosure action. At the undersigned's direction, the FDIC filed a Notice of Supplemental Case Authority on this issue and the cases cited by the FDIC impugn this contention [D.E. 109]. Moreover, although it is undisputed that some of the properties underlying the Loans suffered deleterious effects, such as Chinese drywall and a non-functioning

---

**5.** Given this acknowledgment, the undersigned need not consider the undisputed fact that the FDIC and New BankUnited interpret the P & A Agreement in the same fashion.

**6.** *See* Report and Recommendation RE: D.E. 48 & 67, issued contemporaneously herewith.

**7.** *See* FDIC's Statement of Additional Material Facts [D.E. 66] at ¶¶ 135–38 for the Gustavo Loan; ¶¶ 141–45 for the Dario Loan; ¶¶ 148–51 for the Berstein Loan; ¶¶ 154–155 for the Gamburg Loan; and ¶¶ 159–60 for the Carrazco Loan.

homeowners' association, those matters go to the FDIC's quantum of damages, not its entitlement to recover damages.

Based on the foregoing considerations, summary judgment in favor of Floridian Title as to the breach of contract claims is not appropriate.

### 3. The claims for breach of fiduciary duty

Floridian Title argues that there is no fiduciary relationship between it and BankUnited because the Closing Instructions did not create an express relationship and the requisite elements for a relationship implied at law are not met. See Reply [D.E. 83 at 11] (citing *Real Estate Value Co., Inc. v. Carnival Corp.*, 92 So.3d 255, 262 (Fla. 3d DCA 2012)).

However, it is undisputed that Floridian Title acted as BankUnited's closing agent for each of the Loans. "Agency is [a] fiduciary relationship...." *Cheney v. IPD Analytics, L.L.C.*, No. 08–23188–CIV, 2009 WL 1298405, at *5 (S.D.Fla. Apr. 16, 2009). Therefore, a fiduciary relationship did exist between Floridian Title and BankUnited.

Additionally, there is record evidence supporting the FDIC's claims for breach of fiduciary duty. As BankUnited's closing agent, Floridian Title had "a duty to disclose to [its] principal all material facts relevant to the agency." *SMP, Ltd. v. Syprett, Meshad, Resnick & Lieb, P.A.*, 584 So.2d 1051, 1054 (Fla. 2d DCA 1991). According to the FDIC, Floridian Title failed to make at least one such material disclosure, namely, that the Loans transactions were not arms-length. The relationships among Elias Perchik, Gustavo Perchik, Dario Perchik, Mario Berstein, Beatriz Gamburg and Oscar Grisales are undisputed and it is also undisputed that Floridian Title did not disclose them to BankUnited.

Because it cannot be said as a matter of law that Floridian Title did not owe BankUnited a fiduciary duty and did not breach such duty, Floridian Title is not entitled to summary judgment as to the FDIC's claims for breach of fiduciary duty.[8]

### 4. The negligent misrepresentation claims

The FDIC also predicates its negligent misrepresentation claims on, *inter alia,* Floridian Title's alleged failure to disclose that the Loans transactions were not arms-length. Floridian Title argues that, absent a fiduciary relationship, it had no duty to make such disclosure. See Reply [D.E. 83 at 13] (citing *Taylor Woodrow Homes Fla., Inc. v. 4/46–A Corp.*, 850 So.2d 536, 541 (Fla. 5th DCA 2003)). Because the undersigned has concluded that a fiduciary relationship did exist, this argument fails.

Floridian Title also argues that the FDIC cannot show justifiable reliance on Floridian Title's alleged misrepresentations because it was in a better position than Floridian Title to ascertain those facts. See Reply [D.E. 83 at 14] (citing *Allocco v. City of Coral Gables*, 221 F.Supp.2d 1317, 1355 (S.D.Fla.2002)). However, the *Allocco* court granted summary judgment in favor of the defendant on plaintiffs' negligent misrepresentation claims on more stringent grounds, namely, that the falsity of the defendant's statements was not only discoverable but was

---

**8.** Given this conclusion, the undersigned need not address the FDIC's contention that the training materials on how to detect and prevent mortgage fraud distributed by First American to its closing agents provide additional support for the FDIC's breach of fiduciary duty claims.

actually known by plaintiffs. *Id.* at 1357–59. Therefore, *Allocco* does not support Floridian Title's broader contention.

Based on the foregoing, Floridian Title is not entitled to a judgment as a matter of law on the FDIC's negligent misrepresentation claims.

### 5. The economic loss rule

In *Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Cos.*, the Florida Supreme Court expressly held that "the economic loss rule applies only in the products liability context." 110 So.3d 399, 407 (Fla.2013). Therefore, Florida's economic loss rule does not bar the claims for breach of fiduciary duty and negligent misrepresentation. In its Reply, Floridian Title argues that the tort claims are barred nonetheless because they are inextricably intertwined with the breach of contract claims. *See* Reply [D.E. 83 at 15] (citing *Tiara*, 110 So.3d at 408 (Pariente, J. concurring)). As discussed above, however, Floridian Title's role as closing agent for BankUnited gives rise to a fiduciary relationship independently of the terms of the Closing Instructions. Moreover, the FDIC's claims for breach of fiduciary duty and negligent misrepresentation are independent of the Closing Instructions because they are based, *inter alia*, on Floridian Title's alleged failure to disclose that the Loans transactions were not arms-length. Therefore, the tort claims are not inextricably intertwined with the breach of contract claims as a matter of law.

### CONCLUSION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Floridian Title's Motion for Summary Judgment [D.E. 46] be DENIED.

The parties have **fourteen (14) days** from the date of receipt of this Report and Recommendation within which to serve and file objections, if any, with the Honorable Federico A. Moreno, Chief United States District Judge. *See* Local Magistrate Rule 4(b). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. *See Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir.1993).

RESPECTFULLY SUBMITTED at Miami, Florida this 24th day of July, 2013.